THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL E. BURROWS, Defendant-Appellant.

Fourth District    No. 14769

Opinion filed October 18, 1978.

TRAPP, J., dissenting.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and James G. Condon, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

On May 12, 1977, in the circuit court of Adams County, defendant Michael Burrows and James Anthony (Tony) Varner were jointly charged with the offense of armed violence. An aggravated assault committed while armed with a dangerous weapon constitutes the offense of armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A-2). The substance of the charge against defendant and Varner was that they knowingly discharged a shotgun in the direction of Leo Altmix thereby placing him in reasonable apprehension of receiving a battery. Charges against Varner were dismissed after his death. Following a jury trial, defendant was convicted of armed violence and sentenced to 1 to 3 years' imprisonment.

On appeal defendant contends (1) the evidence was insufficient to establish that the conduct attributed to him placed Judge Altmix in reasonable apprehension of receiving a battery and (2) the prosecution improperly introduced evidence from which the jury could infer that defendant had been involved in an unrelated crime.

At trial, Leo Altmix, an associate judge for Adams County, testified that on May 11, 1977, he conducted a bench trial at which the defendant Michael Burrows was found guilty of an ordinance violation and fined $50. About 10:20 that evening, he was at home with his daughter when he heard a vehicle in front of the house. He was sitting in the living room with his back to a bay window which faced the street. The drapes were closed, but there was a light on beside his chair and in the kitchen which would "give visibility from the outside." His daughter walked from the kitchen past the front window and about 10-12 feet from the bay window, and he rose out of his chair and was "somewhat in front of the window." At that time there was a terrific crash and glass was falling making a loud noise. He testified that he was frightened and "scared stiff." He called the police and after they arrived, he saw that the outside window was shattered but the inside window was just dented. He thought that the first noise he heard was the glass crashing and could not say that he actually heard a shotgun blast.

Defendant contends that being "scared" is not the same as being in reasonable apprehension of receiving a battery. He argues that Judge Altmix did not see anyone shoot or prepare to shoot but merely heard the sound of the breaking glass; that Altmix's fear was just a startled reaction to that sound and not a response to any conduct attributed to defendant.

■■■ In *People v. Alexander* (1976), 39 Ill. App. 3d 443, 350 N.E.2d 144, the court ruled that the victim of an assault need not expressly testify that he was in reasonable apprehension of receiving a battery, but that the trier of fact could draw that inference from the testimony of the witnesses. In the instant case, Judge Altmix was in close proximity to the window when he heard a crash and the sound of breaking glass. Under those circumstances, he could reasonably fear that he might be injured by flying glass or the object or objects which broke the glass. Such an injury could constitute a battery. The jury in the instant case could properly find that Judge Altmix was in reasonable apprehension of receiving a battery.

Pat Harmon, who knew defendant and his wife, testified that on May 11 at about 9 p.m., she was at the Forum, a discotheque, when Tony Varner told her that the defendant wanted to talk to her. She went outside to the parking lot with Tony. Defendant was sitting on the passenger side of his truck and she saw a rifle or shotgun in the truck. Defendant told her that he had been to court that day and had been fined on a peace

disturbance and that he was "going to do the Judge's house." He mentioned Judge Altmix's name.

Over defendant's objection, she then testified that she saw the defendant driving his Ranchero on June 16, the evening before the preliminary hearing in the instant case. He passed her once, then stopped and asked her if she knew what tomorrow was and told her "not to make any mistakes." He also told her to remember "where Varner is." She knew that Varner was dead. When she told him that she had to tell what she knew, he said that she "didn't have to tell them nothing."

■■ At trial, defendant objected to Ms. Harmon's testimony concerning the June 16 conversation on the ground that it concerned a separate pending charge against defendant for intimidation. The trial court properly overruled the objection. Evidence of an attempt by a defendant to influence the testimony of a witness is admissible as tending to show consciousness of guilt. *People v. Bloom* (1938), 370 Ill. 144, 18 N.E.2d 197.

Following the testimony of Ms. Harmon, Sam Swaim, special agent with the Iowa Bureau of Criminal Investigation, testified that on May 29, 1977, he was called to investigate the death of a subject who was found in a river. The death did not appear to be from natural causes and he identified a photograph of Tony Varner as being that of the dead person. Defendant argues that Swaim's testimony concerning the circumstances surrounding the death of Tony Varner was totally unrelated to any issue in defendant's trial. He contends that Swaim's testimony gave rise to the inference that defendant was involved in some manner in Varner's death, and that such an improper insinuation is especially prejudicial in a case, such as the instant one, where the evidence of defendant's guilt is entirely circumstantial.

■■ This issue has not been properly preserved for review. The only objection made to Swaim's testimony at trial occurred when the prosecutor asked him to describe the injuries Varner had received and defense counsel objected to the question as irrelevant. The issue was not raised in the written motion for new trial filed by defense counsel nor in defendant's pro se motion to vacate the conviction. If an objection is not made at trial and the issue is not raised in a post-trial motion, the issue is considered waived and the court need not consider that issue on appeal unless it constitutes plain error. *People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

■■ Swaim's testimony was relevant and had probative value to further explain the nature of defendant's threat to Ms. Harmon. The testimony itself was very limited. Closing arguments were not included in the record on appeal, but defendant does not contend that the prosecutor made improper or inflammatory use of this evidence. We do not consider the presentation of this evidence to have been plain error.

Accordingly, we affirm.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

I can only conclude that it was plain error for the prosecution to inject into the evidence before the jury the testimony of the Iowa State Police investigator concerning the death of the co-defendant, Varner, whose body was found in the Mississippi River while the prosecution was pending.

Ultimately, the witness was permitted to testify that Varner's death was not from natural causes. Incident to such point, however, prosecuting counsel put before the jury the following:

"Q. All right, sir, was the person still there by the river when you arrived?

A. Yes.

Q. Would you describe what type of injuries he had?

A. The—

BY MR. WOOLEYHAN: Objection, Your Honor, it is not relevant.

BY MR. BIER: Your Honor, I think it is in light of the testimony of the last witness. I don't intend to go into it closely. I do want to talk about two different wounds

BY THE COURT: I'd sustain it. I don't see that that would be relevant.

Q. The person was deceased.

A. Yes.

Q. Did his death appear to be of natural causes?

A. No, it did not."

While death from drowning in the Mississippi might be deemed an unusual cause, the discussion of the two different wounds immediately raises an inference of homicide.

The prosecution argues with considerable inconsistency that the prosecution did not suggest to the jury that defendant had caused Varner's death and that the testimony was relevant and proper to show the character and nature of defendant's alleged purported threats to intimidate the State's witness, Harmon.

The record is clear that the State's Attorney did not suggest to the jury

that defendant was not responsible for Varner's death. On the other hand, such evidence permitted hardly any inference by the jury other than that of a homicidal death. The noun "wounds" is more commonly associated with foul play, while "injury" is more commonly associated with accident or misadventure.

Rationally, if it was not intended to raise an inference of foul play, then such testimony has no logical relevance to the character and nature of the purported threat to Harmon. There is probative value upon the evidence of intimidation only if you permit an inference that defendant was associated with the death of his former friend and companion, Varner.

The prosecution argues that the testimony was necessary to corroborate the fact of the death of Varner. The fact of Varner's death was not an issue before this jury, and in the context of the purported intimidation the witness had testified that she knew Varner was dead. Under the circumstances of the proceedings, there was no issue calling for, or even suggesting, a need for corroboration. No rationally proper purpose for calling the officer appears or is even suggested.

It is fairly arguable that there was a substantial balance to the evidence of guilt so that this court may review errors that were not raised in the post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280, 269 N.E.2d 856.) Defendant argues that the proof of defendant's guilt is circumstantial evidence. The evidence in the record is of such character that the prosecution tendered and the court gave over defendant's objection an accountability instruction. Although defendant's automobile was seen, defendant was never actually identified as being present and he presented several alibi witnesses, albeit of the tavern quality.

Upon the evidence so introduced by the prosecution there are no ascertainable bounds to the prejudicial inferences that might be drawn by the several jurors. As stated in *People v. Newman* (1913), 261 Ill. 11, 15, 103 N.E. 589, 591, the question is what the jury would have done if the improper testimony had not been introduced. Here, it can not be said that the jury might not have had a reasonable doubt.

For such error the conviction should be reversed and the cause remanded for a new trial.