GUIDRY, Judge.
On August 13, 1985, defendant, Richard Caillouet, was charged by grand jury indictment with attempted first degree murder, a violation of La.R.S. 14:27 and 14:30. The bill of information was amended on December 3,1985, to a charge of attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. Defendant entered a plea of not guilty and was tried before a jury of twelve persons. The jury returned, by a vote of 11 to 1, a responsive verdict of guilty of aggravated battery.
Subsequent to the verdict, the court ordered a presentence investigation. Defendant moved for a post-verdict judgment of acquittal, which motion the court denied. The court, for reasons assigned, sentenced defendant to serve a term of five years at hard labor with the Louisiana Department of Corrections. Defendant appeals his conviction and sentence urging four assignments of error.
*1313 FACTS
During the early morning hours of August 4, 1985, the victim, Ms. Cheryl Daigle, ■ and a friend, Dawn Ciszek, left their place of employment in Lafayette and traveled to a local late night lounge known as “Cowboys”. The two went in separate cars.
After being in the lounge for approximately twenty minutes, the two women departed and each got into her own car. Cheryl waited in her car to see if Dawn’s car would start as she had been experiencing car trouble.
While Cheryl sat waiting, a man, later identified as the defendant, approached Cheryl’s car at the driver’s window. When he knocked on the window Cheryl was looking away. Thinking it was Dawn having trouble, Cheryl lowered the window before she realized that it was the defendant and not her friend.
Defendant asked the victim for directions to another establishment. He appeared to her to be somewhat intoxicated and he repeatedly reiterated the directions Cheryl gave him incorrectly. The defendant then pulled a gun, pointed it at Cheryl’s head, and demanded she move over. Defendant reached through the window, unlocked the door, and got into the car. Defendant then instructed Cheryl to put her head between her legs so that she could not see where they were going.
Defendant drove to the end of a deserted, dead-end street located in the midst of a corn field. When the car hit something which drug beneath the car, Cheryl raised her head out of normal reflex and defendant told her to keep down or he would kill her. Defendant put the car in reverse, backed up a little, then jumped out of the car. He told Cheryl to get out of the car but she refused. Defendant repeatedly told her to get out of the car or he would kill her. He then took a couple of steps toward the car and raised his gun as though he was going to fire it at her.
Cheryl suddenly remembered she had a gun in the console of her car. She grabbed her gun and fired a shot at defendant through the window. She missed and he returned the fire. The two exchanged gunfire and she finally hit defendant. Realizing he had left the keys in the car, Cheryl started the car and drove away. As she drove away, defendant continued to shoot at her. Having no idea where she was nor which direction to take, the victim turned onto a highway and followed a cab. Shortly thereafter she arrived at a residence where she was assisted and instructed to phone the police. Cheryl was cut on her mouth, arms and legs from flying glass and had a fragment of a bullet in her ankle which had to be removed by a physician.
Meanwhile, the defendant, bleeding from his injuries, walked to his brother-in-law’s trailer about a half mile away where he was assisted with his injuries. He was later taken to a local hospital where he was subsequently arrested. The grand jury returned a true bill of attempted first degree murder which was later amended to attempted second degree murder. Defendant was tried before a jury of twelve who found him guilty of aggravated battery.
The defendant appeals his sentence and conviction, urging the following four assignments of error:
1. The trial court erred in not considering defendant’s intoxication as a mitigating factor in imposing a five-year sentence.
2. The trial court erred in finding that the verdict of aggravated battery was supported by sufficient evidence.
3. The trial court erred in admitting irrelevant photographs.
4. The trial court erred in admitting evidence of prior offenses, which the defendant had admitted being convicted of.
ASSIGNMENT OF ERROR NO. 1
Through this assignment, defendant argues that the trial court erred in failing to consider defendant’s intoxication as a mitigating factor in imposing a five-year sentence. The record clearly indicates that the trial judge made a finding of fact that defendant was not intoxicated.
*1314 The ruling of the trial judge on a question of fact is entitled to great weight and will not be disturbed absent a clear abuse of discretion. State v. Nicholas, 312 So.2d 856 (La.1975); State v. Lodrige, 414 So.2d 759 (La.1982), rehearing denied.
Although there is evidence in the record that the defendant had been drinking on the day of the incident, the trial court made the factual determination that the defendant was in control of his faculties. During the sentencing hearing, the trial judge remarked:
“He [defendant] did testify to some drinking. However, his memory was clear about everything that happened. In his story. He was able to find his way to his brother-in-law’s out in the country where he said he wasn’t familiar.... [t]he evidence convinces me that he wasn’t that intoxicated, if any.”
Defendant put on two witnesses at the sentencing hearing who saw him on the morning of the incident and testified that he had been drinking that previous night. However, upon questioning one of these witnesses, the trial judge determined that defendant was not drunk but simply “high” and having a good time. The record supports the trial judge's finding that defendant knew where he was and what he was doing.
The trial court sentenced defendant to five years at hard labor with credit for time served. The crime of aggravated battery carries with it a maximum sentence of ten years at hard labor. In imposing sentence, the trial judge noted:
“... [a]nd I’m satisfied you may have been drinking, but you weren’t drunk, drunk where you didn’t know where you were going. You knew enough to lie about the circumstances. You knew how to find your brother-in-law’s house in the middle of where you say you didn’t know where you were.... ”
Thus, it is clear that the trial judge made a factual determination that defendant was not intoxicated at the time he committed the offense charged. As the trial judge clearly determined that defendant was not intoxicated, he obviously could not consider this allegation as a mitigating factor. For the reasons stated, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant argues through this assignment that the trial court erred in finding that his conviction for aggravated battery was supported by sufficient evidence. The jury, by a vote of eleven to one, returned a responsive verdict of guilty of aggravated battery, a violation of La.R.S. 14:34.
La.R.S. 14:34 defines aggravated battery as follows:
“Aggravated battery is a battery committed with a dangerous weapon.”
A battery is defined in La.R.S. 14:33 as:
“Battery is the intentional use of force or violence upon the person of another;
The test for sufficiency of the evidence is clearly established in Louisiana. The relevant question in testing the sufficiency of the evidence is,
“... whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Brady, 414 So.2d 364 (La.1982).
The record clearly demonstrates that defendant committed an aggravated battery on the person of Cheryl Daigle. The record reflects that defendant repeatedly fired a large caliber pistol at point blank range at Cheryl while she was seated in her car. She received numerous cuts to her hands, legs, and face as a result of flying glass blown from the rear and side windows. Cheryl testified at trial:
“I had glass all over in my right arm, from here to my elbow; it was bleeding. I had three or four little short but deep cuts in my legs, and I had a fragment of bullet in my ankle,”
*1315 The bullet fragment had to be surgically removed by a physician.
When viewing the evidence in a light most favorable to the prosecution, it is clear that defendant abducted Cheryl, took her to a deserted area, threatened to kill her, then fired numerous shots at her at point blank range as she was seated in her car, causing several injuries to her person. For the reasons stated, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 3
Through this assignment defendant asserts that the trial court erred in admitting photographs, exhibits 19 and 20, into evidence without any information or indication as to precisely what those photographs were supposed to represent. During the' trial, defendant objected to the introduction of those photographs alleging that no foundation had been laid for their introduction and that defendant did not know what the pictures purported to reflect.
The photographs in question are close-up shots taken of the deserted area to which defendant drove Cheryl on the morning of the incident. The pictures show shattered glass on the pavement and scattered trash in the surrounding area. Prior to the introduction of these pictures, the prosecution introduced in evidence an aerial photo of the same area. No objection was entered to the introduction of this latter photograph. The disputed photos were admitted in evidence apparently to show that Cheryl’s car windows had been blown out. Daniel M. Brewer, a detective with the Lafayette Parish Sheriffs Office, testified that he took the two disputed pictures in connection with the investigation of the shooting. Brewer testified that he took pictures of all the glass he found in the area.
Defendant argues in brief that there was a mattress shown in the photos and that this prejudiced the jury.[1] However, he made no such argument when he raised his objection at trial. It was determined at trial during Cheryl’s testimony, that she had no knowledge of the mattress being there and no further issue was made of the mattress before the jury.
As the victim suffered several cuts and lacerations as a result of flying glass blown from the windows of her car when defendant fired upon her, there can be no question as to the relevance of these photographs. For the reasons stated, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 4
The defendant argues, through this final assignment of error, that the trial court erred in admitting evidence regarding his prior offenses as he had admitted convictions for the offenses. The record does not support defendant’s contention.
During the trial, the assistant district attorney questioned defendant about any prior criminal convictions which he may have had. The colloquy between the defendant and the assistant district attorney proceeded as follows:
[[Image here]]
Q. Mr. Caillouet, have you ever been convicted of a crime, sir?
A. Once.
Q. Or pled guilty. What was that, sir? A. I had a couple of misdemeanors in New Orleans.
Q. What were you charged with? What were the crimes that you pled guilty to?
A. I don’t remember exactly. It was a while back.
[[Image here]]
Q. Sir, did you or did you not plead guilty to two counts of aggravated assault involving a firearm in Orleans Parish in 1978?
A. Sir, it was a plea bargain.
Q. Is that what you pled guilty to?
A. No.
*1316 Q. What did you plead guilty to?
A. I pled guilty to a misdemeanor.
Q. Aggravated assault is a misdemean- or, sir. Did you plead guilty to that?
A. I don’t remember.”
The court then allowed the prosecutor to question defendant concerning the past conviction to the extent that he established a gun was involved and that the gun belonged to his boss, and that the incident occurred while defendant was guarding equipment in New Orleans. It does not appear that the prosecution’s questions were prejudicial to defendant.
Under well-settled jurisprudence, the extent of questioning allowed by the court was permissible under the circumstances. The Louisiana Supreme Court, in State v. Neslo, 433 So.2d 73 (La.1983), held as follows:
“In State v. Jackson, 307 So.2d 604 (La.1975), this court held that it was not improper to cross-examine a witness about details of a prior conviction for the purpose of establishing the true nature of the offense. Since it is the “bad act” and not the conviction that is relevant to the witnesses’ credibility, the details of the bad act are also relevant. The rule is limited to convictions in order to prevent surprise to the witness and limit the inquiry to readily determinable and easily proved matters. State v. Jackson, supra at 607-08.
The rule of Jackson has been expanded to allow impeachment of defendants testifying on their own behalf with details of prior convictions. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Smith, 419 So.2d 468 (La.1982); State v. Talbert, 416 So.2d 97 (La.1982); State v. Talbot, 408 So.2d 861 (La.1980) (on rehearing new trial ordered on other grounds); State v. Kimble, 407 So.2d 693 (La.1981); State v. McKeever, 407 So.2d 662 (La.1981); State v. Martin, [400 So.2d 1063 (La.1981)] supra; State v. Brown, 371 So.2d 746 (La.1979), reversed on other grounds, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); State v. Sykes, [364 So.2d 1293 (La.1978) ] supra; State v. Thompson, 364 So.2d 908 (La. 1978); State v. Carter, 363 So.2d 893 (La.1978); State v. Dupar, 353 So.2d 272 (La.1977); State v. Elzie, 351 So.2d 1174 (La.1977); State v. Chenier, 343 So.2d 177 (La.1977); State v. Jackson, 339 So.2d 730 (La.1976); State v. Williams, 339 So.2d 728 (La.1976); State v. Elam, 312 So.2d 318 (La.1975).
This court has also recognized the danger of prejudice to a defendant that may result from placing evidence of past bad acts before the jury, and has placed limits on the Jackson cross-examination. State v. Talbot, supra; State v. Connor, 403 So.2d 678 (La.1981); State v. Martin, supra; State v. Oliver, [387 So.2d 1154 (La.1980) ] supra; State v. Brown, supra; State v. Johnson, 368 So.2d 719 (La.1979). The extent to which an inquiry into prior convictions is permitted depends on the facts of each case, the trial court having great discretion to control the length and depth of the examination. State v. Talbot, supra; State v. Brown, supra.”
In the instant case, the trial judge did exercise his discretion in controlling the length and depth of the examination of defendant. The trial judge specifically admonished the assistant district attorney that his interrogation was to be limited to strictly the occurrence of the prior conviction and nothing else.
Defendant testified that the only prior conviction or criminal involvement he had was one misdemeanor in Orleans Parish. The truth was established that he had been charged with aggravated assault and that a plea bargain had been arranged. It appears that the only way to establish “the true nature” of the prior conviction was to allow the prosecution to question defendant. In State v. Neslo, supra, at pgs. 84-85, the court stated:
“The defendant contends that the state’s purpose in inquiring into the original charge was to infer the existence of a pistol on that previous occasion. The defense argues that since at trial the defendant was found guilty of simple robbery there was no pistol, and that was the “true nature” of the offense and therefore the inquiry into the original *1317 charge did not have a valid purpose. We are not prepared to accept the defendant’s argument. The fact that he was not convicted of armed robbery and was convicted of simple robbery is not conclusive proof that there was no gun involved in the incident. There are reasons why a gun might have been inadmissible at trial, or the gun might have disappeared, or, for some other reason, the judge might have chosen to return the lesser verdict. In any event, we cannot find here that the evidence indicates that the jury convicted Neslo because he was a bad person. There is overwhelming evidence that the defendant committed the crime for which he is presently stands convicted. The cross-examination about the true nature of the prior offense did not show that defendant was denied a fair trial.”
Likewise, it cannot be argued that the defendant suffered any prejudice as a result of this line of questioning. As in Neslo, there is substantial evidence that defendant committed the crime for which he presently stands convicted. For the reasons stated, this assignment is without merit.
For the above and foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.

. The photographs reflect that the particular area in question was presumably used by some persons as a site for the dumping of trash.