[No. 27203-9-I.   Division One.   September 27, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. RAMON EVAN BLAND, *Appellant*.

*Kevin R. Cole* of *Washington Appellate Defender Association* and *Theresa Doyle*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Marchese, Deputy,* for respondent.

KENNEDY, J. — Appellant Ramon Evan Bland appeals two convictions of second degree assault. Specifically, he contends that (1) he was denied his right to a unanimous jury, (2) there was insufficient evidence to support the alternative means of committing assault for counts 1 and 2, (3) there was insufficient evidence to find assault of the second victim for count 2, (4) the convictions for counts 1, 2, and 3 violate the constitutional prohibition against double jeopardy, and (5) counts 2 and 3 merged because they were based on the same victims. We affirm as to count 1, reverse and remand for a new trial as to count 2, and reject Bland's double jeopardy and merger claims.[1]

## FACTS
### Procedural Facts

Bland was charged by amended information filed August 9, 1990, with second degree assault of Kelly Jefferson with a deadly weapon, in violation of RCW 9A.36.021(1)(c) (count 1). Also charged was second degree assault of William Car-

---

[1] The double jeopardy and merger claims are treated in the unpublished portion of this opinion.

rington with a deadly weapon, in violation of RCW 9A.36-.021(1)(c) (count 2). Finally, Bland was charged with reckless endangerment in the second degree of William and Mildred Carrington, in violation of RCW 9A.36.050 (count 3).

Bland pleaded guilty to count 3 prior to trial. He proceeded to jury trial on counts 1 and 2 on August 21-22, 1990, and was convicted by special jury verdict, as charged. On October 29, 1990, Bland received sentences of 26 months' confinement on counts 1 and 2 and 12 months on count 3, all to be served concurrently. Bland's sentence for count 3 was suspended pursuant to his paying restitution and serving 3 months in the county jail.

## Substantive Facts

On March 24, 1990, at approximately 4 p.m., Kelly Jefferson was sitting in his car in the 2100 block of East Columbia Street in Seattle. While Jefferson talked with friends, he saw Bland approach the driver's door where he was sitting. His friends immediately dispersed and Jefferson saw that Bland had a revolver pointed at Jefferson's chest. Jefferson's door was open and the car window was down. He estimated that Bland was more than 2 feet away from him with the gun.

Bland shouted, "I'll kill you boy if you don't give my chain back." Earlier in the day Jefferson had forcibly taken a gold chain from Celese McDuffie that he thought belonged to him. McDuffie and Jefferson had dated previously. However, when this incident occurred, McDuffie and Bland were dating each other.

After Bland demanded the gold chain, he lowered his gun and socked Jefferson in the face with his hand or fist. Jefferson, whose car had been running, then sped away because he was afraid he would be shot or injured further. As he drove away, Jefferson saw Bland running after him. Immediately thereafter, he heard the sound of a gunshot which came from Bland's direction.

Raymond Hachia lives in the neighborhood of the 2100 block of East Columbia. He was working on a fence in his

front yard that afternoon, when his attention was drawn across the street to Jefferson's car. Hachia observed Jefferson drive down the hill toward 22nd Avenue and past the Carringtons' home. East Columbia Street slopes downward from 21st Avenue to 22nd Avenue. Hachia then saw Bland, who was at the top of the hill, aim at Jefferson's car and fire one shot. Hachia was certain that Bland was aiming at the car when he fired and that he did not fire randomly into the air.

William and Mildred Carrington live on the corner of 22nd Avenue and East Columbia Street. On the afternoon of the shooting, William Carrington was sleeping in his recliner chair in the living room. Mildred Carrington was in another room watching television. Suddenly, she heard a loud "zap". Ms. Carrington ran to the living room and saw what appeared to be a bullet hole in the living room window. She also observed that the bullet hole was about 8 inches from her husband's head and that he was completely covered with glass. Had Carrington been sitting upright, the bullet would have gone through his head. Carrington was shocked and startled after the shot was fired, realizing how close he had come to being hit.

Seattle police officers recovered an expended bullet in the Carringtons' living room and placed it into evidence. They examined the bullet hole and the path which the bullet appeared to have traveled. Their observations led them to conclude that the bullet was fired from near the top of the hill at 21st Avenue and East Columbia, toward 22nd Avenue.

Seattle police officers recovered a Charter Arms .38-caliber revolver which was hidden underneath a tire of an abandoned car near the scene of the shooting. Forensic scientist Terry Franklin conducted a ballistics examination of the gun and bullet and determined that the expended bullet had been fired from the .38-caliber revolver.

Bland was arrested shortly after the shooting. After being advised of his constitutional rights, Bland waived them and admitted to the police that he had fired the .38-caliber re-

volver, but claimed that he fired it in the air and not at Jefferson. He also acknowledged approaching Jefferson about the gold necklace and arguing with Jefferson. Bland repeated this same story at trial.

The State argued at trial that Bland assaulted Jefferson with a deadly weapon by pointing a gun at Jefferson, threatening Jefferson, and causing Jefferson to flee in fear. The State argued that Bland also assaulted Carrington with a deadly weapon by shooting a bullet through the Carringtons' window, showering Carrington with glass, and startling Carrington out of his sleep.

### Court's Instructions

The trial court instructed the jury on the elements of assault in the second degree under RCW 9A.36.021(1). The court's instruction 7 pertained to the assault on Kelly Jefferson as charged in count 1. Instruction 8 related to the assault on William Carrington as charged in count 2.[2] The court also instructed the jury on the legal doctrine of "transferred intent", which was the State's theory as to count 2. In instruction 9, the court, at the State's request, gave the jury two of the three definitions of assault found in WPIC 35.50. The jury returned a special verdict form, finding that Bland was armed with a deadly weapon when he committed the crimes in counts 1 and 2.

### DISCUSSION
### Multiple Acts

Bland contends that the assault convictions could have been based on his punching of Jefferson, his threatening Jefferson with a gun, and/or his near shooting of Carrington, and thus, this is a multiple acts case and the trial court was required to give unanimity jury instructions. We disagree with Bland's analysis.

---

[2] In each of the "to convict" instructions the jury was instructed that the following elements must be proved beyond a reasonable doubt: (1) that on or about March 24, 1990, the defendant assaulted (the named victim for each count) with a deadly weapon and (2) that the acts occurred in King County, Washington.

In multiple acts cases several acts are alleged, any one of which could constitute a single crime charged. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). In such cases the State must elect which act it will rely upon for a conviction or the court must instruct the jury that all 12 jurors must agree that the same underlying act was proved beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *modified by Kitchen*, 110 Wn.2d 403, 410. *See also Kitchen*, 110 Wn.2d at 410-11.

When the State fails to properly elect and the trial court fails to instruct the jury on unanimity, there is constitutional error. *Kitchen*, 110 Wn.2d at 411. The error is not harmless if

a rational trier of fact could have a reasonable doubt as to whether each incident established the crime beyond a reasonable doubt.

*Kitchen*, 110 Wn.2d at 411 (quoting *State v. Loehner*, 42 Wn. App. 408, 411, 711 P.2d 377 (1985), *review denied*, 105 Wn.2d 1011 (1986)).

In the present case, even if we were to accept Bland's argument that this is a "multiple acts" case as to either count, the State clearly elected (1) Bland's threat of Jefferson with the gun as the single act it was relying on for count 1 and (2) Bland's shooting of the gun and near miss of Carrington as the single act it was relying on for count 2.

First, the State specified in the charging document that the alleged assaults in counts 1 and 2 were both committed with a deadly weapon. In addition, the State used special verdict forms, one effect of which was to make sure that all of the jurors were relying on the deadly weapon acts to convict for the assault charges.

Next, the jury instructions read as a whole make it clear that the State's case is based on Bland's conduct with the deadly weapon. Jury instructions should be read as a whole to determine if they properly inform the factfinder of the applicable law. *Petersen v. State*, 100 Wn.2d 421, 441, 671 P.2d 230 (1983); *State v. Foster*, 91 Wn.2d 466, 480, 589 P.2d 789 (1979).

In addition, during closing argument the State made it clear, once more, that Bland's threatening of Jefferson with the gun was the act the State was relying on for count 1 and Bland's near shooting of Carrington with the gun was the act relied upon for count 2.

In sum, from the record in this case, the charging document, and the special verdict form, it is clear that the State elected Bland's actions with the gun as the actions it was relying on for counts 1 and 2. There is no possibility that the jury could have become confused and thought that Bland's hitting Jefferson in the face might be a second degree assault. There was no error.

Thus, as the verdict for count 1 was clearly based upon Bland's threatening Jefferson with the gun and the verdict for count 2 was clearly based on Bland's shooting of the gun, unanimity instructions were not required and the verdicts for counts 1 and 2 need not be set aside on this basis. *Kitchen*, 110 Wn.2d at 411 (in multiple acts cases, unanimity instructions are not required where State elects which act it is relying on). *See also Petrich*, 101 Wn.2d at 572.

### Alternative Means

Bland also contends that the convictions for counts 1 and 2 must be reversed because the jury was instructed on "alternative means" of committing assault, but the State failed to prove one of the alternative means as to each count.[3] We affirm as to count 1 and reverse as to count 2.

As Bland points out, the court's jury instruction 9 covered only two of the three possible ways to commit assault in Washington State. Instruction 9 stated:

> An assault is an intentional touching or striking or cutting of the person or body of another, regardless of whether any actual physical harm is done to the other person.
>
> An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

---

[3]Bland also argues that the State failed to elect which alternative means it was relying on, thus apparently confusing the alternative means and multiple acts cases. See discussion, *infra*.

Because assault is not defined by the criminal code, the courts rely on the common law definitions of assault. *State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30, *review denied*, 119 Wn.2d 1022 (1992); *State v. Walden*, 67 Wn. App. 891, 893-94, 841 P.2d 81 (1992). Three definitions of assault have been recognized in Washington:

> (1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common law assault].

*Walden*, 67 Wn. App. at 893-94. *See also State v. Russell*, 69 Wn. App. 237, 246, 848 P.2d 743 (1993); *State v. Davis*, 60 Wn. App. 813, 821, 808 P.2d 167 (1991), *aff'd*, 119 Wn.2d 657, 835 P.2d 1039 (1992).[4]

The requirement that the jury be unanimous that the defendant committed the crime charged does not extend to unanimity as to which of several alternate means was used when subtantial evidence supports each method by which the single crime may have been committed. *State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987); *State v. Hupe*, 50 Wn. App. 277, 748 P.2d 263, *review denied*, 110 Wn.2d 1019 (1988).

> In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.

*Kitchen*, 110 Wn.2d at 410. *See also State v. Elliott*, 114 Wn.2d

---

[4]In *Davis* our Supreme Court held that the common law methods of committing assault are not "essential elements" of the crime for purposes of determining the constitutional sufficiency of the charging document. *Davis*, 119 Wn.2d at 663-64. This is not to say, however, that the definitions of assault do not set forth alternate means of committing a single crime within the meaning of *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976), *State v. Franco*, 96 Wn.2d 816, 639 P.2d 1320 (1982) and *State v. Whitney*, 108 Wn.2d 506, 739 P.2d 1150 (1987). *See State v. Hupe*, 50 Wn. App. 277, 748 P.2d 263, *review denied*, 110 Wn.2d 1019 (1988).

6, 14, 785 P.2d 440, *cert. denied,* 498 U.S. 838, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990).

■ If one of the alternative means upon which a charge is based fails and there is only a general verdict, the verdict cannot stand *unless* the reviewing court can determine that the verdict was founded upon one of the methods with regard to which substantial evidence was introduced. *State v. Thorpe,* 51 Wn. App. 582, 586, 754 P.2d 1050, *review denied,* 111 Wn.2d 1012 (1988).

Bland contends that the verdict for count 1 must be reversed as there is not substantial evidence to support both alternative means of committing assault, which were here defined for the jury. We agree that there is not substantial evidence to support the first alternative means of committing assault contained in instruction 9 — unlawful touching, striking, or cutting of the victim, Kelly Jefferson, with a deadly weapon (actual battery).

Here, however, as we have earlier discussed, it is clear from the charging document, the trial record, and the jury's special verdict form, that the verdict on count 1 is based on Bland's use of the gun to threaten Kelly Jefferson.[5] Bland did not touch, strike, or cut Jefferson with the gun. There is no contention that he did. Thus, the first alternative means of committing assault — touching, striking, or cutting — clearly could not apply to count 1. We can determine that the verdict on count 1 was based upon the second alternative means of committing assault, Bland's threatening Jefferson with the gun which caused Jefferson reasonable fear and apprehension. Bland's hitting Jefferson in the face with his hand is not an alternative means of committing second degree assault in any event. As there is substantial evidence to support a finding that Bland assaulted Jefferson in a manner fitting clearly within the second alternative means of committing assault, and only within that means, the verdict for count 1 need not be reversed on the basis of instruction 9. *Thorpe,* 51 Wn. App. at 586.

---

[5] Although the State ordinarily is not required to elect between alternate means of committing a single crime, here, there clearly *was* such an election.

Count 2 is not so clear-cut. The State argued that, when Bland shot the bullet that shattered the Carringtons' window, Bland assaulted Carrington by both of the alternative means of committing assault which were here defined: (1) unlawfully touching Carrington with the broken glass, and (2) causing Carrington reasonable fear and apprehension.

To find Bland guilty of assaulting Carrington with a deadly weapon, the jury would have to have found that (1) on or about March 24, 1990, (2) Bland did an intentional act, with unlawful force, (3) with a deadly weapon, (4) in King County, (5) causing Carrington apprehension and fear of bodily injury, or (6) intentionally touching, striking or cutting Carrington. Under the doctrine of transferred intent, Bland's intent to assault Jefferson as he drove away could be transferred to Carrington. *State v. Clinton*, 25 Wn. App. 400, 403, 606 P.2d 1240 (applying transferred intent doctrine to find assault of victim where defendant swung metal pipe at victim's husband and accidentally hit victim), *review denied*, 93 Wn.2d 1026 (1980).

▌ Bland contends that the apprehension and fear means was not met here. We agree.

Here, it is clear that Carrington did not experience apprehension or fear *before* the bullet entered his window. He was asleep at the time. Nor is there evidence that he feared future injury *after* the bullet came through his window.

The State relies on *State v. Frazier*, 81 Wn.2d 628, 630, 503 P.2d 1073 (1972), to argue that an assault can be committed without the victim's knowledge. In *Frazier*, the Supreme Court of Washington affirmed a conviction for second degree assault where the victim was unaware that the defendant had shot at her. However, *Frazier* was actually an attempted battery case, not a "reasonable fear and apprehension" case. With attempted battery fear and apprehension is not a requirement.[6]

---

[6]An attempt to commit a battery is also an assault. *Walden*, 67 Wn. App. at 894-95; *Russell*, 69 Wn. App. at 246; *Davis*, 60 Wn. App. at 821. However, in the present case, the court did not instruct the jury on that alternative means of committing assault.

The State next asserts that the fear and apprehension Carrington felt *after* the bullet barely missed him was sufficient as to the second alternative means of committing assault. We disagree.

■ Neither side cites to any case law where fear and apprehension *after* the fact was held to be sufficient to find an assault. Nor does our research unearth any cases so holding. *Webster's Third New International Dictionary* 106 (1976) defines apprehension as worry and fear about the *future*; a *pre*sentiment of danger. Neither have we found any case law stating that the fear and apprehension element can be transferred *along with* the intent element to fulfill the elements of assault. Thus, any fear and apprehension experienced by Jefferson as a result of being shot at cannot be transferred to Carrington. In sum, the "fear and apprehension" alternative means fails here.

■ Still, there is merit to the State's argument that the assault of Carrington was completed when the bullet shattered his window and Carrington was showered with glass. The touching of Carrington with the flying glass constitutes an unlawful touching, not by Bland himself, but as a result of a force that he put in motion, to wit, the bullet.

A battery is "an application of force to the person of another 'by the aggressor himself, or by some substance which he puts in motion.' " R. Perkins, *Criminal Law* § 2, at 81 (1957) (quoting *State v. Hefner*, 199 N.C. 778, 780, 155 S.E. 879, 881 (1930)). It may be committed by administering a poison or other deleterious substance, by communicating a disease, or by applying a caustic chemical. R. Perkins § 2, at 81. A battery may be perpetrated in even more indirect ways, such as exposing a helpless person to the inclemency of the weather, or threatening sudden violence and thereby causing another to jump from a window or a moving automobile. R. Perkins § 2, at 81.

In a number of cases courts have found assaults and/or batteries where the victim was struck by flying glass. In *State v. Tucker*, 46 Wn. App. 642, 643, 731 P.2d 1154 (1987), this court

affirmed a conviction for third degree assault where the defendant threw a bar glass at the victim, seriously cutting her face. The testimony of eyewitnesses conflicted over whether the glass hit the victim directly or after shattering against the table or the wall. *Tucker* differs from the case at hand as the defendant intended to hit the actual victim. There was no transferred intent. Seen as an actual battery case, however, *Tucker* is supportive of the proposition that an actual battery was committed on Carrington.

The fact pattern here is quite similar to the facts presented by a Maryland case, *Ford v. State*, 90 Md. App. 673, 603 A.2d 883 (1992), *aff'd*, 330 Md. 682, 625 A.2d 984 (1993). In *Ford* the defendants threw rocks at cars driving down the highway. The appellate court found sufficient evidence to support the jury's finding that there were unlawful touchings, and thus batteries, of many victims by the rocks themselves and/or the flying glass put in motion by the rocks. *Ford*, at 691-92.[7]

Similarly, here there was sufficient evidence to support a finding that Carrington was touched unlawfully by flying glass put in motion by Bland's bullet. *See also State v. Caillouet*, 496 So. 2d 1312, 1315 (La. Ct. App. 1986) (finding sufficient evidence to support conviction for aggravated battery where defendant shot at victim in car, breaking windows, and resulting in numerous cuts to victim from flying glass); *State v. Rice*, 48 Or. App. 115, 117, 616 P.2d 538, 539 (finding attempted assault where defendant broke car windows with a pickaxe and victim received slight cut from flying glass), *review denied*, 289 Or. 741 (1980); *People v. Burrows*, 64 Ill. App. 3d 764, 766, 381 N.E.2d 1040, 1042 (1978) (defendant broke window in victim's house, causing victim apprehension of receiving a battery. Court stated, in dictum, that, had the victim been injured by flying glass, such injury would constitute a battery).

---

[7]The *Ford* court did not discuss transferred intent in relation to the battery convictions. However, the court held that the trial court improperly applied the doctrine to the convictions for assault with intent to maim, disfigure, or disable because that category of assault is a specific intent crime. *Ford*, at 685.

In all of the above cases, the victims were actually cut by the flying glass. However, in Washington, an assault (battery) results from an unlawful touching, whether the victim is injured or not.

Thus, as Bland's intent to shoot Jefferson was properly transferred to Carrington, we find that there was sufficient evidence from which a jury could find that Bland assaulted Carrington by causing an unlawful touching when Carrington was showered with broken glass.

Still, the conviction for count 2 must be reversed. As stated above, the State is not required to elect between alternative means of committing a crime. *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991). However, if one of the alternative methods upon which a charge is based fails for lack of substantial evidence and there is only a general verdict, the verdict cannot stand *unless* the reviewing court can determine that the verdict was founded upon one of the methods with regard to which substantial evidence was introduced. *Thorpe*, 51 Wn. App. at 586. *See also State v. Kitchen*, 110 Wn.2d at 410; *State v. Elliott*, 114 Wn.2d 6, 14, 785 P.2d 440, *cert. denied*, 498 U.S. 838, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990).

Here, it is not clear whether the jury relied on the fear and apprehension means or the unlawful touching means to find that Bland assaulted Carrington. The State argued both means to the jury, but as discussed above, the fear and apprehension means of committing assault fails for lack of substantial evidence. In sum, as one of the alternative means fails and we cannot determine that the verdict was founded upon the remaining alternative means, although substantial evidence was introduced as to the remaining method, the verdict for count 2 must be reversed.

### Sufficiency of the Evidence

Bland contends that there is insufficient evidence for a reasonable trier of fact to find him guilty of second degree assault of Carrington or Jefferson. As should be apparent from the above discussion, we disagree.

■ ■ Due process requires the State to prove its case beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *In re Winship*, 397 U.S. 358, 361, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Therefore, sufficiency of the evidence is a constitutional question which can be raised for the first time on appeal. *Baeza*; *Winship*.

On review, the critical question is:

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). *See also Green*, 94 Wn.2d at 221-22. A challenge to the sufficiency of the evidence admits the truth of the State's evidence and any inferences reasonably drawn. *State v. Gear*, 30 Wn. App. 307, 310, 633 P.2d 930, *review denied*, 96 Wn.2d 1021 (1981).

Here, there was substantial evidence that on March 24, 1990, Bland intentionally pointed a gun at Jefferson and threatened him, and that Jefferson was afraid that he would be shot or injured. Thus, all the requirements of assault with a deadly weapon are met — (1) intentional act, with unlawful force, (2) with a weapon, and (3) the victim's apprehension and fear of bodily injury.

Similarly, there was substantial evidence that on March 24, 1990, Bland intentionally shot a gun at Jefferson, breaking the Carringtons' window and showering Carrington with glass. All of the elements of assault with a deadly weapon are met — (1) an intentional act, with unlawful force, (2) with a weapon, (3) resulting in unlawful touching of the victim. In sum, substantial evidence supports each conviction. However, count 2 is reversed for other reasons, as stated above.

We affirm as to count 1 and reverse as to count 2.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder should be

filed for public record pursuant to RCW 2.06.040, it is· so ordered.

GROSSE and FORREST, JJ., concur.