[No. 29474-9-III.   Division Three.   February 7, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. LINDA KAY
TOSCANO, *Appellant*.

*Susan M. Gasch* (of *Gasch Law Office*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Carole L. Highland, Deputy,* for respondent.

¶1 SWEENEY, J. — This appeal follows convictions for intimidating a public servant, two counts of second degree assault, and attempting to elude a pursuing police vehicle. The defendant used her car to block, or attempt to block, a

car driven by a sheriff's deputy who was pursuing her nephew. We conclude based on our reading of Supreme Court authority that the facts here do not support the conviction for intimidating a public servant but do support the convictions for the two counts of second degree assault. We therefore reverse the conviction for intimidating a public servant and affirm the convictions for the two counts of assault. The defendant did not appeal the attempting to elude conviction.

## FACTS

¶2 This prosecution follows two near collisions between Grant County Deputy Sheriff Tyson Voss and Linda Kay Toscano in Warden, Washington, in the early morning of March 30, 2009. Deputy Voss saw Michael Castoreno commit a traffic infraction, and he turned on his emergency lights to stop him. Mr. Castoreno is Ms. Toscano's nephew. Mr. Castoreno did not stop and Deputy Voss gave chase. Ms. Toscano backed her car out of a driveway at 912 Adams Street in Warden. Deputy Voss drove south and Ms. Toscano drove north on the same street. Ms. Toscano drove left toward the middle of the street and toward Deputy Voss; she refused to yield the right of way to him. Deputy Voss has special training in emergency vehicle operation, including "evasive maneuvers and high speed patterns." Report of Proceedings (RP) at 45. He took evasive action to avoid colliding with Ms. Toscano. He had a couple seconds to react on the gravel road.

¶3 Deputy Voss encountered Ms. Toscano again. Mr. Castoreno turned right to another street. Ms. Toscano then "darted" into the intersection to block the intersection and directed her high beams at Deputy Voss, which made it difficult for him to see. Deputy Voss again changed his course to avoid colliding with Ms. Toscano. Corporal Gary Mansford saw Ms. Toscano's car pull into the intersection "like it was going to hit" Deputy Voss, and he saw Deputy

Voss swerve to avoid her. RP at 173. Mr. Castoreno pulled into the driveway of 912 Adams Street, got out of the car, and ran. Ms. Toscano pulled up to 912 Adams Street soon after. Deputy Voss arrested Mr. Castoreno and Ms. Toscano. Ms. Toscano reported that she was looking for a missing dog.

¶4 The State charged Ms. Toscano with intimidating a public servant, second degree malicious mischief (for an incident that occurred after the pursuit), attempting to elude a pursuing police vehicle, and two counts of second degree assault—one for each encounter with Deputy Voss during the pursuit.

¶5 The court instructed the jury on the elements of intimidating a public servant and defined the relevant terms for the jury. A jury found her guilty of each charge except for the malicious mischief.

## DISCUSSION

¶6 Ms. Toscano appeals and challenges both of her second degree assault convictions and the intimidating a public servant conviction.

### SUFFICIENT EVIDENCE—SECOND DEGREE ASSAULT CHARGE

¶7 Ms. Toscano first contends that the State failed to prove either second degree assault because it did not prove that Ms. Toscano had a specific intent to cause apprehension or that Deputy Voss had apprehension of fear of future bodily injury. She argues that simply being "in the way" of Deputy Voss is not enough to show that she intended to cause him apprehension and, moreover, Deputy Voss had fear only in hindsight.

¶8 We review to determine whether substantial evidence supports the jury's verdict. *State v. Fiser*, 99 Wn. App. 714, 718, 995 P.2d 107 (2000).

¶9 "Second degree assault" means to "assault[ ] another with a deadly weapon." RCW 9A.36.021(1)(c). Com-

mon law, not the criminal code, supplies several definitions of "assault." *State v. Wilson*, 125 Wn.2d 212, 217-18, 883 P.2d 320 (1994). One of these definitions is " 'putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm.' " *Id.* at 218 (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993)). This is the definition of "assault" at issue here.

■■ ¶10 Assault requires specific intent to create the apprehension of harm. *State v. Krup*, 36 Wn. App. 454, 458, 676 P.2d 507 (1984). We conclude that a jury could have inferred the necessary intent from the State's showing here. Ms. Toscano first turned her car into the middle of a gravel road, toward Deputy Voss's patrol car, and refused to yield. Ms. Toscano then "darted" into the intersection with her high beams on "like she was going to hit" Deputy Voss. RP at 60, 173. The jury could have inferred that she drove in this manner because it was likely to cause a crash and would certainly make Deputy Voss afraid of crashing.

■ ¶11 Ms. Toscano relies on *Bland* to argue that the evidence was insufficient to prove that Deputy Voss feared harm. 71 Wn. App. at 348-49. In *Bland*, the defendant shot at a moving car and a stray bullet went through the living room window of Mr. Carrington, who was asleep in a recliner. The bullet missed his head by inches. *Id.* Mr. Carrington was "shocked and startled," but only after the incident, when he realized how close the bullet came to his head. *Id.* at 349. The court held that Mr. Bland's conviction for second degree assault of Mr. Carrington could not stand because apprehension of harm was an element. "Apprehension" means "worry and fear about the *future*; a *presenti*ment of danger." *Id.* at 356 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 106 (1976)). Mr. Carrington was incapable of worrying about or being afraid of any imminent danger because he was asleep when the bullet entered his window. *Id.* at 355.

¶12 Ms. Toscano argues that Deputy Voss, like Mr. Carrington, did not apprehend harm. Specifically, Ms.

Toscano argues that he did not apprehend harm in the first encounter because Deputy Voss did not believe Ms. Toscano intentionally blocked him until after the second incident. Br. of Appellant at 11. Ms. Toscano suggests that this is analogous to the facts in *Bland* where Mr. Carrington did not realize the danger until after the danger had passed. The facts in *Bland*, however, are distinguishable. Deputy Voss was not asleep, unaware of the defendants' actions, and incapable of fearing the consequences of those actions.

¶13 Ms. Toscano also argues that her driving could not evoke the necessary fear because Deputy Voss was a seasoned police officer with special training in high speed evasive maneuvers. Br. of Appellant at 15. Here there is evidence that Deputy Voss had apprehension of harm despite his experience as a police officer. In both encounters, he had to avoid collisions. The jury could have easily inferred from Deputy Voss's actions that he was afraid of crashing into Ms. Toscano's car. We will defer to the jury on the persuasiveness of the evidence here. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

INTIMIDATING A PUBLIC SERVANT

¶14 To prove the crime of intimidating a public servant the State must show that "by use of a threat, [the defendant] attempt[ed] to influence a public servant's vote, opinion, decision, or other official action as a public servant." RCW 9A.76.180(1). There are two elements to this crime: (1) intent to influence a public servant's official action and (2) a threat. *State v. Montano*, 169 Wn.2d 872, 879, 239 P.3d 360 (2010).

¶15 Ms. Toscano contends that the State did not show, and the evidence does not support, either element of intimidation of a public servant. First, she notes that the State must show that she made a "true threat" and that requires a statement. Here she claims she did not make any statement to Deputy Voss; she drove her car. So she could not have urged him to do anything, one way or the other.

¶16 The State responds that there is more than one way to communicate a threat and here Ms. Toscano's conduct spoke volumes about what she intended.

¶17 The question then is whether the conduct here meets one of the statutory definitions of "threat." The relevant definitions of "threat" here include to communicate, directly or indirectly, the intent

- To immediately use force against any person who is present at the time. RCW 9A.76.180(3)(a).

- To cause bodily injury in the future to the person threatened or to any other person. Former RCW 9A.04.110(27)(a) (2007).

- To cause physical damage to the property of any person other than the person making the threat. Former RCW 9A.04.110(27)(b).

- To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationship. Former RCW 9A.04.110(27)(j).

¶18 We interpret statutes to carry out the legislative purpose. *State v. Sullivan*, 143 Wn.2d 162, 174-75, 19 P.3d 1012 (2001). "When a statute is unambiguous, it is not subject to judicial construction and its meaning must be derived from the plain language of the statute alone." *Id.* at 175. A statute's meaning is a question of law, and our review is therefore de novo. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).

¶19 Ms. Toscano's essential argument is that her nonverbal conduct could not have been a threat. She relies on *State v. Stephenson* to argue that she did not threaten the officer because she never made a "verbal statement." 89 Wn. App. 794, 950 P.2d 38 (1998). *Stephenson* is distinguishable on its facts. There the defendant sent threatening letters to superior court judges. *Id.* at 798-99. Mr. Stephenson's essential challenge on appeal was that the intimidating a public

servant statute was overbroad. *Id.* at 799. That is not the issue here.

¶20 All the statutory definitions of "threat" require that the threat "communicate." Intimidating a public servant has been applied to a nonverbal threat in only one case. *See State v. Burke*, 132 Wn. App. 415, 417-18, 421, 132 P.3d 1095 (2006) (concluding that Mr. Burke's "physical behavior" met the statutory definition of "threat" when he took a "fighting stance" with raised fists). Other cases addressing the statute involve clear verbal threats. *See Montano*, 169 Wn.2d at 875 (telling police officer, " 'I know when you get off work, and I will be waiting for you' " and " 'I'll kick your ass' "); *State v. Avila*, 102 Wn. App. 882, 887, 10 P.3d 486 (2000) (telling teacher that he was going to " 'blow off [the teacher's] f——g head' "); *Stephenson*, 89 Wn. App. at 798 (mailing superior court judges threats to file $8 million liens on their property if they failed to meet demands).

¶21 So, for there to be a threat there must also be communication. In *Burke*, the defendant's "fighting stance" with raised fists certainly communicated his intent to intimidate. Ms. Toscano's actions alone—failing to yield to a police officer and blocking an intersection—are for us not forms of communication. "Communication" is "[t]he expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." BLACK'S LAW DICTIONARY 296 (8th ed. 2004). Ms. Toscano was not expressing information to or exchanging information with Deputy Voss. In context, her actions suggest that she wanted to hurt Deputy Voss or interrupt his chase of Mr. Castoreno, but wanting a particular result is not communication. Unlike Mr. Burke, Ms. Toscano's actions are not clear nonverbal communication. *See Burke*, 132 Wn. App. at 417-18. The evidence here is insufficient to support the threat element of intimidating a public servant.

¶22 Our application of the statute here also furthers the legislative purposes of RCW 9A.76.180. The statute's plain language suggests three purposes:

First, it protects public servants from threats of substantial harm based upon the discharge of their official duties. Second, it protects the public's interest in a fair and independent decision-making process consistent with the public interest and the law. And third, by deterring the intimidation and threats that lead to corrupt decision making, it helps maintain public confidence in democratic institutions.

*Stephenson*, 89 Wn. App. at 803-04 (citation omitted).

¶23 The statute is not intended to punish displays of anger or threats alone. *Montano*, 169 Wn.2d at 879 (reversing conviction for intimidating a public servant arising out of breaking free from an arresting officer, grabbing him, and threatening to beat him up); *see Burke*, 132 Wn. App. at 421-22 (holding that "physical attack," yelling profanities, and making " 'fighting threats' " were not enough to prove intent to influence a police officer who was shutting down a house party). In *Montano*, the court explained that treating a police officer inappropriately does not always amount to intimidating a public servant:

> The evidence arguably shows that Montano resisted arrest, and charging him with that crime is appropriate. But the State cannot bring an intimidation charge any time a defendant insults or threatens a public servant. Though such behavior is certainly reprehensible, it does not rise to the level of intimidation. The legislature held the same view, as evidenced by its inclusion in the statute the requirement that the defendant must threaten with the " 'attempt[ ] to influence a public servant's . . . official action.' "

*Montano*, 169 Wn.2d at 879 (alterations in original) (quoting RCW 9A.76.180(1)).

¶24 The facts here do not fit within the class of those the legislature intended to punish. None of the intimidation statute's three purposes would be furthered by application of the statute here. Ms. Toscano went beyond *threatening* substantial harm to Deputy Voss. She actually assaulted him with a deadly weapon, her car. Nor do the facts here

implicate fair and independent decision making or corruption by Deputy Voss.

¶25 Ms. Toscano's conduct also strikes us as more akin to a display of anger (*Montano* and *Burke*) than an attempt to influence. Ms. Toscano assaulted this officer and she attempted to block his path. She physically tried to stop the deputy. It seems to us that if physically confronting an officer and yelling threats at him is not enough to show an attempt to influence, then a physical confrontation without threats is also not enough.

¶26 We reverse the conviction for intimidating a public servant and affirm the convictions for assault.

SIDDOWAY, J., concurs.

¶27 BROWN, J. (concurring in part/dissenting in part) — I concur with the majority except for its holding that the facts do not support the conviction of intimidating a public servant. I believe the State produced sufficient factual evidence to permit the jury to decide whether Linda Kay Toscano's conduct constituted intent to influence Deputy Tyson Voss' official action by threat. Ms. Toscano twice threateningly drove at Deputy Voss to get him to quit pursuing her nephew. While Ms. Toscano's conduct was nonverbal, her actions, when viewed most favorably for the State, can reasonably be found threatening. Thus, I believe the question was properly left for the jury to decide. In sum, the trial court did not err in allowing the jury to decide whether Ms. Toscano's nonverbal conduct was intended as threatening communication to Deputy Voss.

¶28 Accordingly, I respectfully dissent to reversing Ms. Toscano's intimidation conviction.

Review denied at 174 Wn.2d 1013 (2012).