# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>v.<br><br>GRAYLIN RENAULD JANUARY,<br><br>              Appellant. | No. 75170-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 6, 2017 |

LEACH, J. — Graylin January appeals his conviction for felony harassment and unlawful possession of a firearm in the first degree. He challenges the sufficiency of the evidence to convict him, claims violation of his right to a unanimous jury, and asserts ineffective assistance of counsel. Sufficient evidence shows January communicated the intent to kill. Also, the trial court's failure to give a unanimity instruction was not error because January's actual and constructive possession of the gun formed a "continuous course of conduct." Thus, trial counsel was not ineffective for failing to submit a unanimity instruction. We affirm.

## BACKGROUND

Late one afternoon in June 2015, Christopher Saunders was driving his blue Volkswagen Golf. He stopped in the left-turn lane at a stoplight. Felicia January[1]

---

[1] Because Felicia January and Graylin January share a surname, we will refer to Felicia by her first name for clarity.

stopped behind Saunders at the light in her Cadillac Escalade. Her husband, defendant Graylin January, was in the passenger seat of her Escalade. A "road rage" incident ensued that Saunders claimed involved January, a convicted felon, pointing Felicia's gun[2] at him. January challenges the sufficiency of the evidence to prove that he communicated an intent to kill.[3] Accordingly, we recite only the relevant facts.

Saunders testified that when he stopped at the light, either his cell phone or police scanner slid onto the floor from the passenger seat. After Saunders reached down to collect what had fallen, he heard a vehicle behind him "lay on the horn." He described it as a "continuous" honk and claimed the vehicle behind him was the only vehicle honking. Saunders saw that the light was green and started to turn left. After he began turning, the honking continued. In response, Saunders testified, "I threw my middle finger out my sunroof." The vehicle behind him then accelerated to the passenger side of his Volkswagen. Saunders testified that he "screamed fuck you to them." He saw that the driver of the vehicle was an African American female in her 30s. He did not exchange words with the driver but focused instead on the passenger, an African American male in his 30s. Saunders claimed that the passenger asked, "What did you say?" and then turned his whole body toward Saunders and "held up a gun, . . . pointed it at the windshield, cocked

_____

[2] Felicia testified that the gun is hers and she has a concealed weapons permit.

[3] The parties gave conflicting versions of events at trial. Although at trial January and Felicia denied that January had been in possession of Felicia's gun, January does not challenge the sufficiency of the evidence to support that he was in possession of her gun.

it, and proceeded to point it in my direction."[4] Saunders testified, "I was raised to believe you don't pull a gun on somebody unless you're going to shoot, so I was in fear of my life."

Saunders slowed down to learn if the Escalade would continue on. When it slowed in tandem with Saunders, he sped up. Saunders then saw the Escalade pull into a store parking lot. He stopped in a turn lane approximately 1,000 feet from the intersection where the incident occurred. Saunders watched the Escalade in his rearview mirror while he called 911. When the police arrived, Saunders identified the driver and passenger of the Escalade as the individuals involved in the incident.

Felicia testified that immediately after the incident she pulled into the parking lot and went into the store while January waited in the Escalade. She was inside when the police arrived. She told police that her gun was in the center console and gave her consent for them to retrieve it. January testified that when the police questioned him he was scared. He knew that with his felony conviction he was "not supposed to be around [guns]."

A jury convicted January of felony harassment and unlawful possession of a firearm in the first degree. January appeals.

---

[4] Responding Officer Jason Clift's testimony casts doubt on whether January actually cocked the gun; when Clift retrieved the gun from the Escalade's center console, there was no round in the chamber.

## ANALYSIS

### Sufficiency of the Evidence

January challenges the sufficiency of the evidence to support his conviction for felony harassment. When reviewing a sufficiency challenge, an appellate court, viewing the evidence in the light most favorable to the State, asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[5] Sufficient evidence must support every element of the charged offense.[6] The appellate court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[7] In questions of sufficiency, circumstantial evidence and direct evidence carry equal weight.[8]

To convict a person of felony harassment based on a threat to kill, the State must prove beyond a reasonable doubt that the defendant (1) without lawful authority, (2) knowingly threatened to cause bodily injury immediately or in the future, and (3) the threat to cause bodily harm consisted of a threat to kill.[9] "Threat" means to communicate,[10] directly or indirectly, the intent to cause bodily injury.[11] Here, the court also instructed the jury,

---

[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[6] State v. Alvarez, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).
[7] State v. Mehrabian, 175 Wn. App. 678, 699, 308 P.3d 660 (2013).
[8] State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).
[9] RCW 9A.46.020(1)(a)(i), (2)(b).
[10] "'Communication' is '[t]he expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception.'" State v. Toscano, 166 Wn. App. 546, 554, 271 P.3d 912 (2012) (alteration in original) (quoting BLACK'S LAW DICTIONARY 296 (8th ed. 2004)).
[11] RCW 9A.04.110(28)(a).

> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.[12]

January challenges the sufficiency of the evidence to prove that he communicated the intent to kill. He maintains that pointing a gun at another person by itself is insufficient to prove a death threat. The jury may not infer criminal intent from evidence that is patently equivocal.[13] January asserts that the evidence was patently equivocal about whether he was communicating a threat to kill and that the jury received insufficient evidence to resolve the ambiguity. We disagree.

A reasonable juror could find that together, evidence of January's words and actions unequivocally indicate that he communicated the intent to kill Saunders. The nature of a threat depends on all the facts and circumstances and is not limited to a literal translation of the words spoken.[14] "[I]nferences of intent may be drawn only 'from conduct that plainly indicates such intent as a matter of logical probability.'"[15] Saunders testified that January asked, "'What did you say?'" and then "held up a gun, . . . pointed it at the windshield, cocked it, and proceeded to point it in my direction." Saunders described how quickly the incident escalated and explained, "It was pretty instantaneous. I screamed fuck you. [January yelled,] 'What did you say?' Gun to my face." He testified that January did not

---

[12] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 80 (4th ed. 2016).
[13] State v. Vasquez, 178 Wn.2d 1, 14, 309 P.3d 318 (2013).
[14] State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003).
[15] Vasquez, 178 Wn.2d at 14 (quoting State v. Bergeron, 105 Wn.2d 1, 20, 711 P.3d 1000 (1985)).

raise the gun in jest and he "thought for sure I was going to be shot." Saunders was "terrified" making the call to the police.

In an aggressive incident of "road rage," a reasonable person in Saunders's position would interpret a gun pointed in the direction of his head from the vehicle beside his as communicating the intent to kill. Moreover, a jury could logically believe that the question, "What did you say?" in conjunction with pointing a gun in Saunders's direction suggests that if Saunders had repeated what he had said, January would have likely shot him. Sufficient evidence shows that January's conduct plainly indicated the intent to kill. A rational juror could have found beyond a reasonable doubt that January threatened to kill Saunders when he pointed a gun toward Saunders amidst a heated "road rage" incident.

## The Right to a Unanimous Jury

January also asserts for the first time on appeal that the trial court's failure to give a Petrich[16] unanimity instruction violated his right to a unanimous verdict in violation of article I, section 22 of the Washington State Constitution.[17] Generally, we do not consider claims of error raised for the first time on appeal.[18] But a party may raise for the first time on appeal a manifest error affecting a constitutional

---

[16] State v. Petrich, 101 Wn. 2d 566, 683 P.2d 173 (1984).
[17] "A defendant's right to a unanimous verdict is rooted in the Sixth Amendment to the United States Constitution and in article I, section 22 of the Washington State Constitution." State v. Furseth, 156 Wn. App. 516, 519, 233 P.3d 902 (2010).
[18] State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

right.[19] The failure to provide a unanimity instruction is a manifest constitutional error that a party may raise for the first time on appeal.[20]

January contends that the jury had to unanimously accept either the State's theory of actual possession of the gun or its theory of constructive possession. When the State presents evidence of several acts, any one of which is allegedly sufficient to constitute the crime charged, the "'jury must be unanimous as to which act or incident constitutes a particular charged count of criminal conduct.'"[21] The State must elect the act it is relying on or the trial court must instruct the jury that the jury must agree as to what act or acts the State proved beyond a reasonable doubt.[22] But this rule does not apply when the State presents evidence of multiple acts that are a "'continuing course of conduct.'"[23] To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a commonsense manner.[24] A reviewing court will consider "(1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose."[25]

To convict January of unlawful possession of a firearm in the first degree, the jury had to find beyond a reasonable doubt that January knowingly had a

---

[19] RAP 2.5(a)(3); see also State v. Walsh, 143 Wn.2d 1, 7, 17 P.3d 591 (2001).

[20] Furseth, 156 Wn. App. at 519 n.3.

[21] Furseth, 156 Wn. App. at 520 (quoting State v. Borsheim, 140 Wn. App. 357, 365, 165 P.3d 417 (2007)).

[22] Petrich, 101 Wn.2d at 570, 572-73.

[23] State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989) (quoting Petrich, 101 Wn.2d at 571).

[24] Handran, 113 Wn.2d at 17.

[25] State v. Brown, 159 Wn. App. 1, 14, 248, P.3d 518 (2010).

firearm in his possession or control.[26] Possession of a firearm may be actual or constructive.[27] Actual possession occurs when the firearm is in the actual physical custody of the person charged.[28] Constructive possession occurs when the person charged does not have physical possession of the firearm but instead has dominion and control over the firearm.[29] In proving that January possessed a firearm, the prosecution asserted both theories of possession. The prosecution maintained that January actually possessed the firearm by pointing it at Saunders in the intersection and that January constructively possessed the firearm at the store parking lot by sitting in the Escalade alone with the firearm in the center console. January contends that the trial court committed manifest constitutional error by not giving a unanimity instruction because each instance of possession occurred under a different theory of possession, at a different time, and in a different place. We disagree.

January's actual and constructive possession of the gun were part of a continuing course of conduct. January cites State v. Mata[30] for the proposition that an interruption in possession of a firearm may result in more than one possession charge. In Mata, however, Division Three held that the defendant's actual and constructive possession constituted one chargeable offense of possession for purposes of double jeopardy because the State offered no evidence that the

---

[26] RCW 9.41.040(1)(a).
[27] State v. Manion, 173 Wn. App. 610, 634, 295 P.3d 270 (2013).
[28] Manion, 173 Wn. App. at 634.
[29] Manion, 173 Wn. App. at 634.
[30] 180 Wn. App. 108, 120, 321 P.3d 291 (2014).

possession had been interrupted.[31] Mata therefore suggests that whether the defendant's possession was interrupted is decisive rather than if the defendant possessed the gun under more than one theory of possession. Thus, we examine whether January's possession occurred close in time and placed to decide whether his possession was a continuous course of conduct rather than the fact that the State argued both actual and constructive possession.

To support his claim that he did not continually possess the gun, January cites State v. King.[32] There, this court held that a continuing course of conduct does not include two distinct instances of cocaine possession occurring at different times, in different places, and involving two different containers.[33] We distinguish this case from King. January actually and constructively possessed Felicia's gun in nearly the same place at the same time. And, similar to Mata, neither the State nor January presented any evidence that January's possession was interrupted.

Saunders testified that after January brandished a gun in the intersection, January's Escalade pulled into the store parking lot only "one business away" from the intersection. Saunders immediately pulled over and called the police. He told the dispatcher that January had pointed a gun at him "just now, like 30 seconds ago" and that January was at the Short Stop only "a few hundred feet" from the intersection. Officers arrived at the Short Stop within minutes of Saunders calling 911. Felicia testified that she had been in the store for no more than two or three

---

[31] Mata, 180 Wn. App at 120.
[32] 75 Wn. App. 899, 878 P.2d 466 (1994).
[33] King, 75 Wn. App. at 903.

minutes before police arrived. She told the responding officers that her gun was in the center console in the Escalade in which January had been sitting and gave Officer Clift permission to retrieve it. Thus, January's actual possession when he pointed the gun at Saunders and constructive possession when he sat alone in the car with the gun occurred minutes apart within a few hundred feet of one another. This constitutes a continuous course of conduct.

Because January's actual and constructive possession of Felicia's gun constituted a continuous course of conduct, January was not entitled to a unanimity instruction.

### Ineffective Assistance of Counsel

January next claims that he received ineffective assistance of counsel because his trial counsel did not request a unanimity instruction. Claims of ineffective assistance present mixed questions of law and fact, which this court reviews de novo.[34]

The defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense.[35] If the defendant carries this burden, we will reverse.[36] To prove deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness.[37] Appellate courts examine trial counsel's performance with

---

[34] Strickland v. Washington, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[35] Strickland, 466 U.S. at 687.
[36] State v. McFarland, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995).
[37] Strickland, 466 U.S. at 687-88.

great deference, and the defendant must overcome the presumption that the challenged action "'might be considered sound trial strategy.'"[38]

As discussed above, because a unanimity instruction was not required in this case, counsel's performance did not fall below an objective standard of reasonableness. Because January did not show deficient performance, we need not address whether counsel's performance prejudiced January's defense.

### Appellate Costs

Finally, January asks the court to deny the State appellate costs based on his indigency. We generally award appellate costs to the substantially prevailing party on review.[39] But when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[40] Here, the trial court found January was indigent. If the State has evidence indicating significant improvement in January's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

### CONCLUSION

Sufficient evidence shows January communicated an intent to kill by pointing a gun toward Saunders from the vehicle beside his during a "road rage"

---

[38] Strickland, 466 U.S. at 689 (quoting Michel v. State of Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)).

[39] RAP 14.2.

[40] RAP 14.2; see also State v. St. Clare, 198 Wn. App. 371, 382, 393 P.3d 836, review denied, 189 Wn.2d 1004 (2017).

incident. January fails to show that the lack of a unanimity instruction violated his constitutional right to a unanimous jury. Thus, January does not show that defense counsel's failure to propose a unanimity instruction constitutes deficient performance. We affirm.

<span style="float:right">_Leach, J._</span>

WE CONCUR:

_Trickey, ACJ_          _Mann, J._