# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85917-0-I |
| Respondent | DIVISION ONE |
| BENJAMIN ALAN POE, | UNPUBLISHED OPINION |
| Appellant | |

FELDMAN, J. — Benjamin Alan Poe appeals his convictions of second degree assault and third degree malicious mischief. Poe argues that there was insufficient evidence to support his convictions and that the prosecutor committed misconduct. Additionally, Poe requests that his case be remanded to the trial court for the purpose of striking the Victim Penalty Assessment (VPA) and DNA collection fees imposed upon him at sentencing. We remand to the trial court to strike the VPA and DNA collection fees. In all other respects, we affirm.

I

The events at issue in this appeal occurred on November 14, 2021, several days after Poe and Ashley Williams had ended a dating relationship. Early that morning, Williams was at home with her younger sister, who saw a dark truck with purple LED headlights, belonging to Poe, pull up to their home. The driver of the truck threw a lawnmower battery covered in handwritten comments through the

windshield of a parked black Honda that Williams had been borrowing. Written on the battery were the messages "stank pussy," "cop caller," "karma is a bitch," and "punk bitch." The driver then left the scene.

When Williams learned from her sister what had happened, she drove to Poe's residence to confront him. When she discovered that Poe was not there, she began to drive home. On the way, she encountered Poe's truck. Poe sped directly at her, forcing her to swerve out of the way before he reentered his own lane. He then followed her back to her home where he committed additional acts of vandalism as detailed below.

Poe was eventually arrested and charged with second degree assault and third degree malicious mischief. At trial, Poe testified that he had been in Portland, Oregon when the battery was thrown through the windshield of the black Honda and, further, that he could not have thrown such a battery due to an injury. He claimed he was driving home from Portland when he encountered Williams on the road. According to Poe, Williams was driving erratically with no headlights on, and he had to slam on his brakes to avoid her. Poe said he then followed Williams home to try to talk to her.

A jury convicted Poe of second degree assault against an intimate partner and third degree malicious mischief. Poe appeals.

**II**

A.    Insufficient Evidence

Poe argues that the State presented insufficient evidence to sustain a conviction of assault in the second degree. We disagree.

On appeal, we determine the sufficiency of the evidence presented at trial by deciding "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). This determination requires that "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). With regard to "conflicting testimony, witness credibility, and the persuasiveness of the evidence," we defer to the triers of fact. *State v. Raleigh*, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010).

The State charged Poe with second degree assault, which required it to prove beyond a reasonable doubt that Poe had assaulted Williams with a deadly weapon and had done so with the requisite intent. RCW 9A.36.021(1)(c). Addressing the intent element, the trial court instructed the jury that "[a]n assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Poe claims that the evidence presented at trial was insufficient to prove his intent.

Contrary to Poe's argument, a rational trier of fact could have found that Poe intentionally created the apprehension of bodily harm in Williams. Jurors may infer criminal intent based on a defendant's conduct where that intent is "plainly indicated as a matter of logical probability." *State v. Bea*, 162 Wn. App. 570, 579, 254 P.3d 948 (2011). Deferring to the jury's determination of credibility, we resolve

the conflicting testimony between Williams and Poe in Williams' favor.  Williams testified that as she was driving home from Poe's residence, she recognized the distinct purple LED headlights on his truck as it was driving toward her, above the speed limit, in her lane.  She was forced to swerve sharply to avoid him and was surprised that she did not hit a tree or a curb.  *Id*. at 152.  It is a logical inference that when Poe sped straight toward Williams in her lane of traffic, he did so to make her think he might hit her with his car. Williams testified that her life flashed before her eyes and that Poe's intentions "were very clearly to hurt [her]."  *Id*. at 155.  This evidence, interpreted most strongly against Poe, is sufficient to establish the requisite intent.

Additionally, because criminal intent may be "gathered from all the circumstances of the case," Poe's behavior immediately following the near-collision further supports a finding of guilt.  *State v. Shelton*, 71 Wn.2d 838, 839, 431 P.2d 201 (1967).  After avoiding a possible collision, Williams noticed Poe's truck following her back to her home.  Upon arriving there, she swiftly exited her car and ran to her front door, locking it just in time to keep out Poe, who, having also exited his vehicle, was chasing her with a metal pole.  While chasing Williams, Poe yelled profanities and demanded to be let inside.  Before leaving the scene, Poe used the metal pole to break Williams' porch light as well as to smash the side mirror on the black Honda.  Viewing this evidence in favor of the State, as we must, we conclude a jury could reasonably find the intent element of the crime beyond a reasonable doubt

Citing *State v. Ward*, 125 Wn. App. 243, 104 P.3d 670 (2004), Poe argues that "[d]irecting intimidating conduct at someone does not necessarily establish sufficient evidence to support the requisite intent to support a conviction for assault in the second degree." In *Ward*, the court stated that the specific intent required for second degree assault "may be inferred from pointing a gun, but not from mere display of a gun." 125 Wn. App. at 248. If pointing a gun is sufficient to establish that a defendant had the intent to cause apprehension of bodily harm, then it logically follows that driving a car straight toward somebody would also be sufficient to establish intent.

Poe next attempts to support his argument by asserting that the evidence of intent here falls short of that in *State v. Baker* 136 Wn. App. 878, 151 P.3d 237 (2007), and *State v. Toscano*, 166 Wn. App. 546, 271 P.3d 912 (2012). In *Baker*, while being pursued by police, the defendant reversed his vehicle into a police cruiser and swiped a police motorcycle. 136 Wn. App. at 881-82. In *Toscano*, the defendant drove her car directly in front of a police cruiser that was giving chase to her nephew's vehicle and then darted into a nearby intersection, with her high beams on, to once more block the path of the cruiser. 166 Wn. App. at 549. Just like the defendants in those cases, Poe drove his vehicle directly at another occupied vehicle, and his subsequent actions (following Williams home, chasing her with a metal pole, destroying her property) are more than sufficient to support a finding that he had the requisite intent to cause apprehension and fear of bodily injury in Williams.

Finally, Poe argues that there was no evidence presented to show that Poe recognized the oncoming car as Williams' and that his actions could easily be the result of reckless driving or driving under the influence. Even if it is possible that Poe was driving recklessly or while under the influence, these are not proper reasons to find insufficiency of the evidence: "[t]he existence of hypothetical explanations consistent with innocence does not mean there is insufficient evidence to support a conviction." *State v. VJW*, 37 Wn. App. 428, 433, 680 P.2d 1068 (1984). For the same reason, the possibility that Poe did not recognize the oncoming car as Williams' does not vitiate the evidence presented at trial which indicated that Poe did recognize Williams.

Considering the evidence above in the light most favorable to the State, a reasonable trier of fact could have found beyond a reasonable doubt that Poe intended to create the apprehension of bodily harm in Williams.

B.    Prosecutorial Misconduct

Next, Poe argues that the prosecutor committed misconduct by improperly commenting on Poe's constitutional right to remain silent. We disagree.

During closing arguments, the prosecutor stated as follows:

> Where was the defendant on November 14th when the police arrived? He was gone. He left. He left the house. He didn't stick around on November 14th to tell the police hey, I can't throw that battery into that car because I got a bum arm. He didn't stick around for that. He didn't stick around to tell the police that he was actually [down] at Delta Park when all this thing was going down buying cigarettes at 1:00 in the morning. It's not until a year later, today, that he offers any story about what happened.

Poe claims that the prosecutor's remarks were improper because they commented on Poe's right to remain silent.

Poe failed to object to the prosecutor's comments at trial. "[F]ailure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). Under this heightened level of scrutiny, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* We "consider[] the prosecutor's arguments in the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *Id.*

Even if the prosecutor's remarks were improper, as the State here appears to concede, they did not cause a prejudice incurable by an admonition to the jury. The burden is on Poe to show that "(1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict." *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012). If Poe had objected at trial, the court could have explained that the jury should not use Poe's absence from the scene of the crime as substantive evidence of his guilt, effectively neutralizing any prejudice that may have been caused by the remarks.

Poe argues that the remarks were prejudicial because the case turns on the jury's determinations of credibility. However, the State convincingly responds that although "Poe admitted no evidence beyond his testimony, the State's case contained more than simply the credibility of Williams's [sic] testimony." The State presented the corroborating testimony of Williams' sister, a recording of the 911

call made by Williams to the police, and testimony of responding officers as to Williams' demeanor upon arrival at her residence as well as photos of the broken side mirror on the black Honda, the broken light fixture from Williams' porch, the battery lodged in the black Honda's windshield, and the vulgar writings on the battery. Additionally, the trial court provided instructions to jurors deeming them "the sole judges of the credibility of each witness" and informing them that "lawyers' statements are not evidence." On this record, we cannot find, as we must to grant relief, that the prosecutor's remark in closing argument was so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

For similar reasons, Poe's reliance on *State v. Burke*, 163 Wn.2d 204, 181 P.3d 1 (2008), is misplaced. In that case, the defendant invoked his right to remain silent during a police interrogation, and at trial the prosecutor "intentionally invited the jury to infer guilt from Burke's *termination* of his interview" with the police. *Id*. at 222 (emphasis added). The court held that the prosecutor's statement was an improper comment on the evidence because it focused on Burke's invocation of the right to remain silent during an interview. *Id*. at 222-23. Here, in contrast, the prosecutor did not comment directly on Poe's right to remain silent but rather on his flight from the scene. Additionally, unlike *Burke*, the prosecutor's statement here could have been neutralized by a curative instruction and was not, in any event, prejudicial given the substantial corroborating evidence at trial.

Considering the neutralizing potential of a curative jury instruction and the lack of enduring prejudice that resulted, Poe fails to show that the prosecutor's remarks had a substantial likelihood of affecting the jury verdict on either charge.

C.    <u>VPA and DNA Collection Fees</u>

Finally, Poe requests that we remand his case to the trial court to strike both the $500 VPA as well as the $100 DNA collection fee imposed upon him during sentencing. Under the recently amended RCW 7.68.035 and 43.43.7541, no VPA may be imposed upon an indigent defendant and no DNA collection fee may be imposed upon defendants regardless of indigency. Although the amended statutes took effect after Poe's sentencing, they apply here because Poe's case is on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). At trial, Poe was found to be indigent. We therefore remand for the trial court to strike the VPA and DNA collection fee from Poe's judgment and sentence.

In all other respects, we affirm.

_____
Feldman, J.

WE CONCUR:

_____    _____
Coburn, J.                    Smith, C.J.