# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No.59556-7-II |
| Respondent, | |
| v. | |
| A.I., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – AI appeals his juvenile court adjudication of intimidating a public servant. The adjudication arose from an incident while AI was being held in a Lewis County juvenile facility. After he caused a disruption, staff decided to move AI into a different area.  AI refused to be moved, and when officers stepped toward him he told the officers, "If you touch me, I'll break your neck."  AI then had to be physically restrained and removed from the area.

We hold that (1) sufficient evidence would support a finding that AI's statement to the officers was a true threat under the standard adopted in *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023); (2) the trial court erred in failing to make an express finding that the statement constituted a true threat, and the error was not harmless; (3) the remedy for the trial court's error is to remand for the trial court to decide whether to make a true threat finding; and (4) the evidence was sufficient to support the trial court's conclusion that AI's threat was made to intimidate a public servant.

Accordingly, we remand for the trial court to decide based on the existing record whether AI's statement to the officers constituted a true threat and to enter the appropriate finding.

FACTS

*Background*

On March 5, 2024, 14-year-old AI was detained in a juvenile detention facility on charges unrelated to this appeal. AI had been to court in the morning, and he was upset about the result of his case. He was in his pod with his door closed, separated from other youth having recreation time. AI was also upset that he had not had recreation time that day.

Heidi Parnel, a detention officer working on the general population floor, saw that AI appeared agitated and was acting out. AI swore at Officer Parnel and began sliding things under his door. Officer Parnel testified that she alerted other officers about AI's behavior and recommended they keep an eye on him. Officer Parnel's supervisor, Officer Lima-Hernandez, became involved and the officers decided to move AI into "Delta Pod", a separate pod that is more segregated from general population. Rep. of Proc. (RP) at 9. They made this decision based on AI's behavior.

Officers Parnel and Lima-Hernandez entered AI's room. They told AI that he was going to be moved into Delta Pod and directed him to grab his things. The officers explained that AI could either walk on his own to Delta Pod or be escorted, and they reiterated this option multiple times. AI refused to walk to Delta Pod on his own.

As the officers began to approach, AI said, "[I]f you touch me I will break your neck." RP at 10. The officers grabbed AI, brought him to the ground, placed him in restraints, and escorted him toward Delta Pod. Throughout this process AI continued to resist, yelled profanities, and stated, "I've been practicing for this." RP at 10-12.

2

The State charged AI with one count of intimidating a public servant under RCW 9A.76.180(1)(3)(a).

*Juvenile Court Proceedings*

Officer Parnel and AI testified at trial. Officer Parnel testified to the facts of the incident stated above. She stated that the officers tried to deescalate by asking AI what was going on, but AI remained agitated.

AI testified that he did not like going to Delta Pod, but that he would have been willing to move later when he calmed down. When the State asked AI why he did not explain that he was upset to the officers, AI stated, "How am I supposed to say that when I'm mad?" RP at 27. AI also testified that he did not like being touched due to past experiences where he had been restrained by school staff and placed in an isolation room. AI also testified that his statement was not directed toward the officers, and he said, "I don't know what I'm saying when I'm mad." RP at 22-24.

The trial court entered findings of fact consistent with the facts stated above. The trial court entered the following conclusions of law:

> (a) The respondent's threat was directed at staff.
> (b) The threat was made in an attempt to influence the official decision that had been made to move [AI] into D Pod.
> (c) The State of Washington has met its burden, and the respondent is guilty as charged.

Clerk's Papers at 6. Neither the court's written findings nor the court's oral ruling addressed whether the threat made to the officers constituted a true threat.

AI appeals his adjudication.

ANALYSIS

A.    TRUE THREAT REQUIREMENT

AI argues that the evidence presented at trial was insufficient to prove that the statement he made to officers constituted a true threat under the *Counterman* recklessness standard.  AI also notes that the trial court did not make a finding that his statement was a true threat.  We hold that sufficient evidence would support a finding that AI's statement to the officers was a true threat under the standard adopted in *Counterman*.  However, we hold that the trial court erred in failing to make an express finding that the statement constituted a true threat, and the error was not harmless.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.  *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). For a bench trial, " 'appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law.' "  *State v. Johal*, 33 Wn. App. 2d 408, 412, 561 P.3d 1235, *review denied*, 4 Wn.3d 1028 (2025) (quoting *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014)).  In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).

2.    Legal Principles – True Threat

AI was convicted of intimidation of a public servant under RCW 9A.76.180(1), which states, "A person is guilty of intimidating a public servant if, by use of a threat, he or she attempts to influence a public servant's vote, opinion, decision, or other official action as a

4

public servant." The statutory requirements are (1) a threat, and (2) an attempt to influence a public servant's official action. *State v. Toscano*, 166 Wn. App. 546, 552, 271 P.3d 912 (2012).

In addition to statutory requirements, the court in *State v. Dawley* held that the First Amendment to the United States Constitution requires that any threat related to a charge of intimidating a public servant must be a true threat. 11 Wn. App. 2d 527, 541-43, 455 P.3d 205 (2019). Therefore, under *Dawley* an element of the crime of intimidation of a public servant is that the defendant's threat constituted a true threat.

"True threats are " 'serious expression[s]' " conveying that a speaker means to " 'commit an act of unlawful violence.' " *Counterman*, 600 U.S. at 74 (alteration in original) (quoting *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003)). In *Counterman*, the Court held that the First Amendment requires that that the true threat determination must include a "subjective mental-state requirement." 600 U.S. at 75. The State must prove that the defendant made the threat at least recklessly. *Id*. at 69, 79. This means the State "must show that the defendant consciously disregarded a substantial risk that [the] communications would be viewed as threatening violence." *Id*. at 69. The defendant must be "aware 'that others could regard [the] statements as' threatening violence and 'deliver[ed] them anyway.' " *Id*. at 79 (quoting *Elonis v. United States*, 575 U.S. 723, 746, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015) (Alito, J., concurring in part and dissenting in part)).

3.   Sufficiency of the Evidence

It is undisputed that AI told the officers, "[I]f you touch me I will break your neck." RP at 10. And the statement was made in the context of AI resisting being moved to another pod. After making the threat, AI physically resisted the officers, requiring them place him in restraints. Viewing the evidence in the light most favorable to the State, we conclude that a

rational trier of fact could find that AI "consciously disregarded a substantial risk that [the] communications would be viewed as threatening violence." *Counterman*, 600 U.S. at 69. Accordingly, we hold that the evidence was sufficient to prove that AI's statements to the officers constituted a true threat.

4.   Failure to Make True Threat Finding

JuCR 7.11(d) states that after an adjudicatory hearing in juvenile court, the trial court must enter writing findings of fact and conclusions of law that "state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision." The failure to comply with JuCR 7.11(d) is error. *See State v. Alvarez*, 128 Wn.2d 1, 17, 904 P.2d 754 (1995).

Here, the trial court did not make a specific finding that AI's statement to the officers constituted a true threat. Therefore, the trial court erred in failing to enter a finding on an element of intimidation of a public servant.

Failing to enter a required finding is subject to a harmless error analysis. *See State v. Banks*, 149 Wn.2d 38, 43-44, 65 P.3d 1198 (2003) (addressing CrR 6.1(d), which similar to JuCR 7.11(d) requires written findings and conclusions following a bench trial). "The test to determine whether an error is harmless is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Id.* at 44 (quoting *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)).

Here, the evidence of AI's state of mind was not uncontroverted. On one hand, AI admitted saying, "[I]f you touch me I will break your neck." RP at 22. This language plainly conveys a threat to commit violence. The trial court found this threat was directed at the staff in

the room with AI at the time. And after the officers restrained AI, he said, "I've been practicing for this." RP at 10-12.

On the other hand, AI was 14 years old and angry on the day of the incident. He testified, "I don't know what I'm saying when I'm mad." RP at 23. AI also testified that he made the threatening statement because he does not like being touched due to past traumatic experiences being restrained by school staff and placed in an isolation room. When the State asked why he didn't explain to the officers that he was having a bad day, AI responded, "How am I supposed to say that when I'm mad?" RP at 27. This testimony shows that AI struggled to regulate his emotions, communicate with others, and control his impulses regarding things he said when he was angry. The testimony is also consistent with well-established principles about brain development and impulse control for juvenile offenders that we consider in other contexts. *See State v. Houston-Sconiers*, 191 Wn. App. 436, 442, 365 P.3d 177 (2015).

The evidence is ambiguous as to AI's state of mind. His young age and testimony about his inability to control or even know what he says when he is angry, especially, supports a lack of harmlessness beyond a reasonable doubt. We cannot say whether the trial court would have found AI if the court had expressly addressed whether he acted with conscious disregard that his communications would be viewed as threatening violence. Therefore, we conclude that the trial court's error in failing to make a finding regarding whether AI's statement to the officers constituted a true threat was not harmless.

5. Remedy

The remedy for a trial court's error in failing to make a required finding is to remand for the trial court to decide whether to make that finding. *Alvarez*, 128 Wn.2d at 19. Accordingly,

we remand for the trial court to decide based on the existing record whether AI's statement to the officers constituted a true threat and to enter the appropriate finding.

B.       ATTEMPT TO INFLUENCE A PUBLIC SERVANT

AI briefly argues that the State did not present sufficient evidence to prove that he attempted to influence a public servant's official action. We disagree.

In addition to a true threat, the State must prove that the defendant attempted to influence a public servant's official action. RCW 9A.76.180(1); *Toscano,* 166 Wn. App. at 552. "[T]o convict a person of intimidating a public servant, there must be some evidence suggesting an attempt to influence, aside from the threats themselves or the defendant's generalized anger at the circumstances." *State v. Montano*, 169 Wn.2d 872, 877, 239 P.3d 360 (2010).

Here, as the officers approached to move AI to a different pod he said, "[I]f you touch me I will break your neck." RP at 10. AI testified that he made the statement because he did not want to be touched, especially given his history of being restrained by school officials. A reasonable inference is that AI made his threat to influence the officers' decision to physically move him to another pod.

Viewing the evidence in the light most favorable to the State, we conclude that sufficient evidence supported the trial court's conclusion that AI attempted to influence an official action.

CONCLUSION

We remand for the trial court to decide based on the existing record whether AI's statement to the officers constituted a true threat and to enter the appropriate finding.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

GLASGOW, J.

PRICE, J.