# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49261-0-II |
| Respondent, | PUBLISHED OPINION |
| v. | |
| GARY PINKNEY, | |
| Appellant. | |

BJORGEN, C.J. — Gary Pinkney appeals from his misdemeanor harassment conviction asserting that (1) the State failed to present sufficient evidence in support of the conviction, (2) the prosecutor committed misconduct at closing argument by misstating the law to the jury, and (3) the State failed to support the corpus delicti of the crime with evidence independent of his confession.[1]  We affirm.

## FACTS

On November 7, 2015, Pinkney was living with his ex-wife, Jill Clark-Pinkney, in her home.  The two had dissolved their marriage in 2008, but Pinkney had moved into Clark-

---

[1] Pinkney also requests that we exercise our discretion to waive appellate costs in this matter. Because Pinkney's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill.

Pinkney's home in 2013 after he began experiencing issues with his health. In 2014 Clark-Pinkney encouraged Pinkney to move from the house.

On the morning of November 7, Pinkney and Clark-Pinkney began arguing. Clark-Pinkney asked Pinkney to leave the living room where he had been sleeping on the couch so that she could do some work. Pinkney refused to leave the room. When Pinkney later left the room to let his dog in the house, Clark-Pinkney sat on the couch where he had been sleeping. Pinkney became angry, started cursing at Clark-Pinkney, and went to his bedroom. Pinkney called a Veterans Affairs (VA) crisis hotline.

After about an hour, Clark-Pinkney believed Pinkney had fallen asleep, and she turned off the lights in his bedroom. Pinkney was still speaking to someone at the VA crisis hotline and yelled, "She just came in here and turned the lights off on me." Verbatim Report of Proceedings (VRP) (May 18, 2016) at 123. Pinkney believed that Clark-Pinkney knew he was still speaking on the phone when she turned off his lights. Clark-Pinkney and Pinkney dispute what happened next.

According to Clark-Pinkney, she heard Pinkney tell someone on the phone, "I am going to kill her. I am going to kill her." VRP (May 18, 2016) at 125. Pinkney then ran out of his room, screamed at Clark-Pinkney and yelled, "I am going to kill you." VRP (May 18, 2016) at 125. Pinkney also told Clark-Pinkney, "I'm going to punch you in the face. I am going to put my hands around your neck, and this time I am going to kill you." VRP (May 18, 2016) at 127. Clark-Pinkney grabbed her phone, called Pinkney's daughter, and locked herself in a bathroom.

Pinkney admitted that he had a confrontation with Clark-Pinkney in the kitchen but denied that he had said anything to her. Pinkney stated that he had only clenched his fist near Clark-Pinkney's face and growled at her.

After receiving a call from the VA crisis hotline operator, Tacoma police officers arrived at the home to perform a welfare check on Pinkney. Pinkney told Officer Leah Mixon that "he was at his wit's end with his ex-wife" and that he "was afraid he might kill her." VRP (May 18, 2016) at 88. After Officer Danilo Bambico spoke with Clark-Pinkney, the officers arrested Pinkney.

The State charged Pinkney with one count of felony harassment based on a threat to kill. The matter proceeded to a jury trial. At trial, witnesses testified consistently with the facts as stated above. Additionally, Clark-Pinkney and Pinkney both testified about a 1998 incident in which Pinkney had been intoxicated, grabbed Clark-Pinkney by the neck, and threw her to the ground. The trial court instructed the jury on the lesser-included offense of misdemeanor harassment based on a threat of bodily injury.

On the lesser-included harassment charge, the State argued the following at closing:

> If you don't find felony harassment, you are asked to consider the crime of harassment. The only difference, and you can look at the elements, is instead of a threat to kill, was a threat to cause bodily injury. That act alone, where the defendant is in that kitchen with his fist in Ms. Clark-Pinkney's face, is conduct that is a threat that is putting her in fear of physical harm.

RP (May 19, 2016) at 148-49.

The jury did not reach a verdict regarding the felony harassment charge and returned a verdict finding Pinkney guilty of the lesser-included harassment charge. The jury also returned a special verdict finding that Pinkney and Clark-Pinkney were members of the same family or household during the commission of the crime. Pinkney appeals from his harassment conviction.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Pinkney first contends that the State failed to present sufficient evidence in support of his misdemeanor harassment conviction. Specifically, Pinkney contends that the State's evidence showed only that Pinkney raised his fist to Clark-Pinkney's face and that the harassment statute, RCW 9A.46.020, does not criminalize non-verbal threats. Because the term "threaten" as used in RCW 9A.46.020 includes non-verbal threats, evidence that Pinkney raised his fist to Clark-Pinkney's face and growled was sufficient to support Pinkney's misdemeanor harassment conviction.

Evidence is sufficient to support a conviction if it permits any reasonable juror to find the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the State. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence. *Condon*, 182 Wn.2d at 314. When reviewing the sufficiency of evidence in support of a conviction, we view circumstantial evidence as no less reliable than direct evidence. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015). Additionally, we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Pinkney of the lesser-included crime of misdemeanor harassment as instructed, the State had to prove beyond a reasonable doubt that (1) without lawful authority, (2) he knowingly threatened to cause Clark-Pinkney bodily injury immediately or in the future, and (3) by words or conduct placed Clark-Pinkney in reasonable fear that the threat would be carried

out. RCW 9A.46.020(1)(a)(i), (b). Pinkney challenges only the second element, asserting that RCW 9A.46.020 does not criminalize non-verbal threats.

Our fundamental goal in statutory interpretation is to ascertain and carry out the intent of the legislature. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). In doing so, we look first to the plain language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). In determining the plain meaning of a statute based on statutory language, we examine the context of the statute, related provisions, and the statutory scheme as a whole. *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015). The plain meaning of an undefined statutory term can be discerned from the dictionary definition of the term. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009).

We hold that the plain meaning of "threaten" as used in RCW 9A.46.020 includes all threats, whether or not verbalized. As relevant, RCW 9A.04.110(28) defines "threat" in the context of RCW 9A.46.020 in the following terms: "'[t]hreat' means to communicate, directly or indirectly the intent: (a) To cause bodily injury in the future to the person threatened or to any other person." In turn, the plain meaning of "communicate" includes non-verbal conduct. For example, *State v. Toscano* held that "'[c]ommunication' is '[t]he expression or exchange of information by speech, writing, *gestures, or conduct*; the process of bringing an idea to another's perception.'" 166 Wn. App. 546, 554, 271 P.3d 912 (2012) (emphasis added) (quoting BLACK'S LAW DICTIONARY at 296 (8th ed. 2004)). Similarly, *State v. Burke*, 132 Wn. App. 415, 421, 132 P.3d 1095 (2006), held that defendant's physical behavior of taking a "fighting stance" met the statutory definition of "threat" under RCW 9A.76.180.

Under this authority, the plain meaning of "threaten" as used in RCW 9A.46.020 may include non-verbal utterances or gestures. Clenching one's fist in another person's face and

growling conveys to a reasonable person the intention to cause bodily harm to that person. With that, Pinkney's actions constituted a threat to cause bodily harm under RCW 9A.04.110(28) and *Toscano*, discussed above.

Thus, evidence that Pinkney raised his fist to Clark-Pinkney's face and growled was sufficient to support a jury finding that he knowingly threatened to cause her bodily injury immediately or in the future. Accordingly, Pinkney's sufficiency claim lacks merit.[2]

## II. PROSECUTORIAL MISCONDUCT

Next, Pinkney contends that the prosecutor committed flagrant and ill-intentioned misconduct by misstating the law during closing argument. We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). A prosecutor's misstatement of the law may constitute improper conduct. *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). If, as here, a defendant fails to object to the prosecutor's allegedly improper conduct at trial, the defendant waives a claim of prosecutorial misconduct on appeal unless the conduct was "so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

Pinkney asserts that the prosecutor misstated the law by arguing to the jury at closing argument that it could find Pinkney guilty of harassment based on his non-verbal threat of raising

---

[2] Because evidence that Pinkney raised his fist to Clark-Pinkney's face and growled at her was sufficient for the jury to find the State had proved the "knowingly threaten" element of misdemeanor harassment, we need not address Pinkney's argument that the jury could not consider evidence of his verbal threats to kill Clark-Pinkney in light of its failure to reach a verdict on the felony harassment charge.

his fist to Clark-Pinkney's face. Pinkney contends that this was a misstatement of law because RCW 9A.46.020 does not criminalize non-verbal threats. Having rejected that contention above, Pinkney fails to show that the prosecutor committed misconduct by misstating the law at closing.

### III. CORPUS DELICTI

Last, Pinkney contends that his conviction must be reversed because the State failed to support the corpus delicti of the crime charged with evidence independent of his confession. We disagree.

As an initial matter, the State asserts that Pinkney has waived his corpus delicti claim on appeal by failing to assert it at trial. However, after briefing was completed in this matter, our Supreme Court held that a defendant may raise a corpus delicti claim for the first time on appeal. *State v. Cardenas-Flores*, 189 Wn.2d 243, 401 P.3d 19 (2017). Accordingly, we turn to the merits of Pinkney's contention.

"A defendant's incriminating statement alone is not sufficient to establish that a crime took place." *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006) (footnote omitted). The State must present independent evidence to corroborate that the crime described in the defendant's incriminating statement occurred. *Brockob*, 159 Wn.2d at 328. The corpus delicti rule "tests the sufficiency or adequacy of evidence" to corroborate a defendant's incriminating statement independently of that statement. *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). The corpus delicti can be proved by either direct or circumstantial evidence. *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996).

"The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration *of the crime described in a defendant's incriminating statement*." *Brockob*, 159 Wn.2d at 328. "Prima facie corroboration of a defendant's

incriminating statement exists if the independent evidence supports a 'logical and reasonable inference of the facts sought to be proved.'" *Brockob*, 159 Wn.2d at 328 (quoting *Aten*, 130 Wn.2d at 656) (internal quotation marks omitted). In assessing whether there is sufficient evidence of the corpus delicti, we view all reasonable inferences in the light most favorable to the State and assume the truth of the State's evidence. *Aten*, 130 Wn.2d at 658.

To establish the corpus delicti of a crime, the State must present prima facie evidence of two elements: (1) an injury or loss and (2) a criminal act causing such injury or loss. *Cardenas-Flores*, 189 Wn.2d at 252 (citing *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986)). As applied to Pinkney's lesser-included harassment charge, the State was required to present prima facie evidence that (1) someone's threat of bodily injury caused (2) Clark-Pinkney to reasonably fear that such threat would be carried out. Clark-Pinkney's testimony that Pinkney had threatened to kill her, punch her in the face, and put his hands around her neck, together with her testimony that she feared he would carry out those threats, was prima facie independent evidence establishing the corpus delicti for the crime of harassment.

Pinkney contends that we cannot consider Clark-Pinkney's testimony about Pinkney's threats to kill her when determining whether independent evidence supported the corpus delicti of misdemeanor harassment because the jury's failure to reach a verdict on his felony harassment charge showed that it did not find Clark-Pinkney's testimony credible. However, in contrast to the beyond-a-reasonable-doubt standard of proof required for a criminal conviction, evidence required to support the corpus delicti of a crime "need not be sufficient to support a conviction or even show that the offense occurred by a preponderance of the evidence." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 279, 404 P.3d 629 (2017). Because the standard of proof required to support the corpus delicti of a crime is lower than that required to support a criminal conviction, the

jury's failure to reach a verdict on Pinkney's felony harassment charge is irrelevant to our determination of whether independent evidence supported the corpus delicti of misdemeanor harassment. Accordingly, Pinkney's corpus delicti contentions fail.

CONCLUSION

The plain meaning of "threaten" as used in RCW 9A.46.020 includes all threats, whether or not verbalized. Thus, the evidence was sufficient to support finding that Pinkney knowingly threatened to cause Clark-Pinkney bodily injury immediately or in the future. We also hold against Pinkney's other challenges and affirm his conviction.

_____, C.J.
Bjorgen, C.J.

We concur:

_____
Worswick, J.

_____
Maxa, J.