# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Respondent,<br><br>   v.<br><br>LEVAUGHN LAFAYELLE MCVEA,<br><br>          Appellant. | No. 56692-3-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, C.J. — LeVaughn McVea pointed a gun at his 13-year-old daughter and threatened her. The jury convicted McVea of felony harassment and second degree assault and also returned special verdict findings that he was armed with a deadly weapon for both counts. At sentencing, the trial court imposed firearm sentencing enhancements, rather than deadly weapon enhancements, and ordered McVea to register as a felony firearm offender.

McVea appeals. He argues that the trial court improperly admitted evidence of his prior threats and violent interactions with family members and that the State presented insufficient evidence to support his convictions. McVea also argues the trial court erred by imposing firearm enhancements and registration when the jury found that he was armed with a deadly weapon. The State concedes we should remand for resentencing on the enhancements.

We accept the State's concession and we reverse in part and remand for the trial court to strike the firearm sentencing enhancements and impose deadly weapon enhancements instead. We otherwise affirm.

FACTS

I. BACKGROUND

OL, McVea's daughter, lived in Tacoma with her younger brother and her maternal grandmother, Linnea Rushforth. One afternoon, when OL was 13 years old, she found McVea standing on the porch. McVea asked OL to come with him and OL refused several times. The situation escalated, McVea began yelling, he pointed a gun at OL and at some point during the incident said, "'I'm going to pop you all'" if OL did not go with him. 3 Verbatim Rep. of Proc. (VRP) at 242. OL's grandmother called 911. OL's uncle arrived and fought with McVea while OL ran next door to a neighbor's house, which prompted the neighbor to also call 911. McVea left after Rushforth yelled the police were coming.

The State charged McVea with felony harassment and second degree assault, both with firearm enhancements. The State later added charges for witness tampering and several violations of pretrial no contact orders, which are not at issue in this appeal.

II. PRETRIAL

Felony harassment based on a threat to kill requires proof that the defendant threatened to kill another person and that the victim had a reasonable fear the threat would be carried out. RCW 9A.46.020; *State v. C.G.*, 150 Wn.2d 604, 612, 80 P.3d 594 (2003). Before trial, the State moved to admit evidence of four incidents of McVea's past violent behavior that OL either had witnessed or had knowledge of. The State asserted that OL would testify that she was afraid McVea would kill her, and McVea's prior acts were admissible to show that OL's fear of death was reasonable under ER 404(b). Specifically, the State moved to admit evidence of three assaults that had occurred within the two months leading up to the alleged incident. These incidents included an

assault on OL's stepmother in the driveway, when McVea pushed OL's stepmother and OL watched; a separate assault on her stepmother that OL witnessed; and an assault on OL's uncle that OL learned about from Rushforth. The State also moved to admit evidence of an incident where OL watched McVea shoot a gun at another person's vehicle when she was between seven and eight years old.

McVea opposed the State's motion and filed a motion to exclude the evidence of prior acts, arguing they did not meet any exception under ER 404(b) and were extremely prejudicial. He asserted that the prior acts were not relevant because they were not directed towards OL and three of the incidents did not involve a weapon.

The trial court found that the incident in the driveway, the incident with OL's stepmother, and the incident with OL's uncle, were "close in time" to when the alleged incident occurred and were admissible pursuant to ER 404(b) for the specific purpose of proving the reasonableness of OL's fear. 1 VRP at 23.The trial court reasoned that evidence of "a real assault that [OL] either witnessed or had direct knowledge about" was relevant to understanding whether OL had a reasonable basis for believing that McVea would carry out his alleged threat. 1VRP at 17. The trial court also found that because the evidence was necessary to prove an element of felony harassment, it would not be overly prejudicial with a proper limiting instruction. The trial court excluded evidence of the fourth incident involving the shooting into a car because it was too remote in time to lend any real viability to the reasonableness of OL's fear and it was too prejudicial.

## III. TRIAL

A.      Evidence Presented

1.      Testimony about the current incident

At trial, OL testified that when McVea arrived at her grandmother's house, he seemed "[a]ngry" and did not look like his normal self. 3 VRP at 149-50. When McVea told OL to come with him, she said that she could not because she had plans to meet a friend. McVea repeated his request to "come with [him] now." 3 VRP at 150. OL testified that after she refused a second time, McVea became angry and said, "'I'm your pop,'" then he accused OL of helping her stepmother cheat on him. *Id.*

Rushforth joined OL at the front door when she heard McVea's raised voice. She heard OL say she could not go with McVea because she had other plans. She heard McVea again ask OL to come with him, but it was "like he was in another zone," and he did not respond to OL's replies. 3 VRP at 217.

OL testified that McVea pulled a gun out of his front pocket and pointed it at her. The prosecutor asked OL to confirm what McVea said while holding the gun: "And you said that he said that he was pop off? . . . Is that what you said?" 3 VRP at 151. OL responded, "Yes." 3 VRP at 152. Rushforth testified that she heard McVea say, "'I'm going to pop you all.'" 3 VRP at 218, 242. She understood that to mean that "[h]e was going to kill us . . . or kill -- do something to my granddaughter." 3 VRP at 218.

OL described the gun as looking "like a cowboy gun," similar to one "off of the movies." 3 VRP at 152. OL said that she felt scared that McVea would shoot the gun at her or her brother.

OL yelled to Rushforth, "'He's got a gun. He's going to kill something. . . . Call the police.'" 3 VRP at 259.

Rushforth testified that McVea walked away. When he did, he repeated the "pop statement," and she noticed the flash of a gun tucked in the back of his pants. 3 VRP at 219. While Rushforth was still on the phone with 911, she heard McVea yell, "'You took my gun.'" 3 VRP at 221. He eventually found a gun in his car, "but it wasn't the same gun [Rushforth] saw in his pocket" on the porch. 3 VRP at 222.

OL testified that her uncle arrived, and McVea and her uncle started yelling and fighting in the driveway. Rushforth testified that while they were fighting in the driveway, a gun dropped to the ground. OL ran to the neighbor's house. The neighbor testified that she opened the door to find OL looking very "fearful," with "tears in her eyes." 3 VRP at 296. OL told the neighbor that "she needed to call 911" and that "her dad was there . . . to take her somewhere . . . and that he had a gun." 3 VRP at 296-97. Rushforth eventually yelled that the police were coming and McVea left.

2.      Testimony about prior incidents of violence against family members

The trial court instructed the jury that part of OL's testimony and part of Rushforth's testimony could be used only to decide whether OL was placed in reasonable fear that the alleged threat would be carried out. The trial court told the jury that they may not consider the answers to specific questions posed to both OL and Rushforth for any other purpose.

After this instruction, OL testified that there had been events in the months before the incident that made her more afraid of McVea's behavior that day. OL testified that on one occasion, she witnessed McVea push her pregnant stepmother. On another occasion, OL returned home with her other grandmother and stepmother to find McVea in the driveway. McVea accused the three

of them of helping OL's stepmother cheat. McVea repeatedly tried to hit OL's stepmother and said, "'Don't make me pop off.'" 3 VRP at 162. OL testified that she was scared during that incident because she didn't know what McVea was going to do. OL also testified that she heard from Rushforth that OL's uncle was in the hospital because McVea "busted" his head open. 3 VRP at 163. OL stated that these incidents changed the way she felt about McVea because before these incidents she "didn't think he would [have done] it to [her]." 3 VRP at 164.

After the trial court gave the same limiting instruction during Rushforth's testimony, Rushforth said that a few months before the charged incident, she learned that McVea's brother was in the hospital with bleeding on the brain after a fight with McVea. Rushforth also testified that OL had talked to her about the incidents in the driveway and her stepmother's home and that all of these events were upsetting to OL.

B.      Jury Instructions, Closing Argument, and Verdict

At the conclusion of trial, the trial court reminded the jury that to find McVea guilty of felony harassment, it could consider evidence relating to McVea's prior misconduct only "to the extent you find it relevant to the issue of whether [OL] was placed in reasonable fear that the threat to kill would be carried out." Clerk's Papers (CP) at 85. The trial court also instructed the jury that to find McVea guilty of second degree assault, the jury must find beyond a reasonable doubt that McVea assaulted OL "with a deadly weapon." CP at 95. The trial court instructed that "[a] firearm, whether loaded or unloaded, is a deadly weapon." CP at 97. The court also gave the jury special verdict forms asking the jurors to determine whether McVea was armed with a deadly weapon at the time of the crimes.

In closing argument, the State explained to the jury that in order to convict McVea of felony harassment, the State had the burden to prove all of the elements. With regard to whether OL's fear was reasonable, the State reminded the jury that this was not the first time that OL had "seen her father lose control and get violent." 4 VRP at 346. The State recounted OL's testimony about McVea's prior violence against family members. The State argued that these incidents were "in her mind" and that they added to the already reasonable fear of OL having a gun pointed at her. 4 VRP at 346.

The jury found McVea guilty of felony harassment and second degree assault, both with deadly weapon enhancements, violations of the pretrial no-contact orders, and witness tampering.

C.      Sentencing

McVea appeared pro se at sentencing. The trial court imposed a sentence at the top of the standard range of 84 months for the assault conviction, 42 months for the felony harassment conviction, and 60 months for the witness tampering conviction to be served concurrently. The trial court also imposed 54 months of consecutive firearm enhancements, even though the jury answered only deadly weapon special verdicts. The total sentence was 138 months.

The trial court also ordered McVea to register as a felony firearm offender. McVea questioned the felony firearm registration form. He stated that he never had to register before. The trial court instructed the State that McVea did not need to sign the form, the State could just indicate that he was refusing to sign. McVea asserted, "I'm not going to register." 5 VRP at 408. The prosecutor stated, "We will say you refused," and McVea confirmed that he refused. 5 VRP at 408-09.

McVea appeals his convictions and sentence.

ANALYSIS

I. ADMISSIBILITY OF PRIOR ACTS

McVea argues the trial court abused its discretion by admitting McVea's prior bad acts under ER 404(b). He asserts that the prior acts were not relevant because they all concerned adult family members and this incident concerned his "own young daughter." Opening Br. of Appellant at 35. We disagree.

A.     Legal Principles

We review a trial court's admission of evidence for abuse of discretion. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). An abuse of discretion occurs when a "'trial court's decision is manifestly unreasonable or based upon untenable grounds.'" *Id*. (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

ER 404(b) bars evidence of prior bad acts "for the purpose of proving a person's character and showing that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Evidence of prior bad acts may, however, "be admissible for any other purpose, depending on its relevance and the balancing of its probative value and danger of unfair prejudice." *Id.*

When determining whether prior bad acts are admissible, a court considers whether the prior conduct occurred by a preponderance of the evidence, the purpose for which the evidence is sought to be introduced, its relevancy to the crime charged, and whether its probative value outweighs the danger of unfair prejudice. *Gunderson*, 181 Wn.2d at 923. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

To prove felony harassment based on a threat to kill, the State had to establish "that the person threatened was placed in reasonable fear that the threat to kill would be carried out." *C.G.*, 150 Wn.2d at 612. If the evidence shows the victim's subjective fear, we consider whether the fear was reasonable using an objective standard considering the context of the case. *State v. Cross*, 156 Wn. App. 568, 582, 234 P.3d 288 (2010). Evidence of what the victim knew of the defendant's past violent acts is relevant to determine whether the victim's fear was objectively reasonable. *See State v. Ragin*, 94 Wn. App. 407, 411-12, 972 P.2d 519 (1999).

In *Ragin*, the defendant called the victim from jail and threatened to murder the victim and his family. *Id*. at 410. At Ragin's trial for felony harassment, the trial court admitted evidence of Ragin's previous statements to the victim including "that he could build bombs, had access to guns . . . , and that he could level the City Church and 'waste' the pastors." *Id.* On appeal, Division One held that the trial court did not abuse its discretion in admitting the statements because the prior acts put the threats in context in order to allow the jury to determine whether the victim's fear was reasonable. *Id.* at 411-12.

B.      Prior Acts in this Case

Here, the trial court did not abuse its discretion when admitting evidence of some of McVea's prior bad acts under ER 404(b). It was not disputed that the prior acts occurred. The trial court found that evidence of "a real assault that [OL] either witnessed or had direct knowledge about" was relevant to proving the reasonableness of OL's fear. 1 VRP at 17. The trial court acknowledged that this evidence would be prejudicial, but found that because the State was required to prove OL's fear was objectively reasonable as an element of felony harassment, the probative value of the evidence outweighed the prejudicial effects. And the trial court excluded a

9

prior shooting incident that it determined was too remote to be probative and would be too prejudicial.

At trial, the State only referred to McVea's prior bad acts to argue the reasonableness of OL's fear. The State asked OL what impact these prior bad acts had on her. She responded that they changed the way she felt about her father. Rushforth also testified as to the effect of the prior events on OL, stating that OL had talked about them and they were upsetting to her. During closing arguments, the State referred to the elements of felony harassment before reminding the jury that this was not the first time that OL had "seen her father lose control and get violent." 4 VRP at 346. The State asserted that all of the prior acts were "in [OL's] mind" at the time of the incident and provided context to the reasonableness of OL's fear. 4 VRP at 346-47. The State never argued that these events showed McVea's propensity for violence.

The trial court also mitigated the prejudicial effect of McVea's prior bad acts by providing both oral and written instructions directing the jury to consider evidence of McVea's prior bad acts only for the purpose of determining the reasonableness of OL's fear. We presume the jury followed the trial court's instructions. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). The prior acts in this case helped show that OL knew her father could be violent with immediate family members, including his own wife and brother. See *Ragin*, 94 Wn. App. at 412. We hold that the trial court did not abuse its discretion by admitting evidence of McVea's prior bad acts under ER 404(b).

## II. SUFFICIENCY OF THE EVIDENCE

McVea argues that the State did not present sufficient evidence to support his conviction for felony harassment. McVea also argues that the State failed to prove that he was armed with a deadly weapon for purposes of his second degree assault conviction and the deadly weapon sentencing enhancements. We disagree.

Evidence is sufficient to support a conviction if any rational trier of fact, "viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Circumstantial and direct evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

A.    Felony Harassment

To convict for felony harassment, the State must prove beyond a reasonable doubt that the defendant knowingly made a threat to kill and that the person threatened reasonably feared that the defendant would carry out the threat. RCW 9A.46.020(1)(b),(2)(b)(ii). McVea contends that the State did not provide sufficient evidence to support his felony harassment conviction. Specifically, McVea argues that the State failed to prove that McVea threatened to kill OL, that OL subjectively feared that McVea would carry out the threat, or that any such fear was objectively reasonable. We disagree.

11

1.    Threat to kill

McVea argues that OL only referred to McVea as her "'pop'" and the prosecutor put words in her mouth when they asked her to confirm he said something about popping off. Opening Br. of Appellant at 20. Additionally, McVea argues that even if McVea did say he would "'pop off'" as the prosecutor inferred, that did not constitute a threat to kill. *Id.* He asserts that threatening to "'pop off'" likely meant that he would become "louder and angrier if [OL] did not come with him." *Id.* at 21. But McVea ignores that we must take the State's evidence as true, there was evidence he pointed a gun at OL, and Rushforth heard him threaten to "'pop you all.'" 3 VRP at 218, 242.

"[T]he plain meaning of 'threaten' as used in RCW 9A.46.020 includes all threats, whether or not verbalized." *State v. Pinkney*, 2 Wn. App. 2d 574, 580, 411 P.3d 406 (2018). Gestures or conduct can convey a threat as that term is defined. *Id.* at 581. "[T]he nature of a threat depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken." *C.G.*, 150 Wn.2d at 611. It is not relevant that the speaker does not intend to carry out the threat. *State v. Kilburn*, 151 Wn.2d 36, 38, 84 P.3d 1215 (2004).

Here, the circumstances show that McVea arrived at the house agitated and not acting like himself. When OL refused to go with him, he pulled out a gun and pointed it at her. In a claim of insufficient evidence, the defendant necessarily admits the truth of the State's evidence and we must draw all reasonable inferences in the State's favor. *Homan*, 181 Wn.2d at 106. OL testified that McVea pointed a gun at her when he became angry that she could not go with him, and Rushforth heard McVea threaten, "'I'm going to pop you all. '" 3 VRP at 218. Assuming this testimony is true, as we must, and resolving conflicting evidence about what McVea said in the

State's favor, we conclude this was sufficient evidence to establish that McVea threatened to kill OL. When considering all of the circumstances, a rational jury could have found that McVea threatened OL's life.

　　2.　　OL's fear

McVea argues both that OL did not subjectively fear he would kill her, and that even if she did experience such fear, her fear was not reasonable. With respect to the former contention, McVea argues that OL testified only that she was scared that McVea would "'shoot the gun at her or [her brother],'" but did not say she feared that McVea would actually try to kill her. Opening Br. of Appellant at 22 (alteration in original). With respect to the latter contention, McVea asserts that although he had displayed a temper in the past, there was no evidence that McVea had ever been violent with or directly threatened OL. Thus, he contends, her fear was not reasonable.

To prove felony harassment based on a threat to kill, the State must show that the person threatened was placed in reasonable fear that the threat to kill would be carried out. *C.G.*, 150 Wn.2d at 612. Thus, the victim must subjectively fear that the threat will be carried out, and the fear must be objectively reasonable. *State v. E.J.Y.*, 113 Wn. App. 940, 952-53, 55 P.3d 673 (2002). The reasonableness of the victim's fear is a question for the trier of fact in light of the total context. *State v. Trey M.*, 186 Wn.2d 884, 906, 383 P.3d 474 (2016).

Here, while it is true that OL did not directly say that she feared McVea would kill her, OL did testify that when McVea pointed the gun at her, she felt "scared," and she thought McVea was going to shoot her or someone else. 3 VRP at 154. As discussed above, there was evidence that OL witnessed or knew about multiple incidents where McVea physically attacked close family

members, including his pregnant wife. And there is little meaningful distinction between a fear of being shot versus a fear of being killed.

The fact that McVea had a history of violence against adults, does not render a 13-year-old's fear unreasonable—to the contrary, it supports that fear. We conclude that there is sufficient evidence that OL's testimony established subjective fear when she said she was afraid McVea would shoot her, and her fear was objectively reasonable in light of all of the circumstances. There was sufficient evidence to establish McVea committed felony harassment.

B.      Second Degree Assault with a Deadly Weapon and the Deadly Weapon Enhancement

McVea argues that the State did not present sufficient evidence to prove that the object McVea pointed at OL was a "'gun in fact' rather than a 'toy gun.'" Therefore, the State failed to prove that McVea was armed with a deadly weapon for the purposes of his second degree assault conviction and the sentencing enhancements. Opening Br. of Appellant at 26. We disagree.

The trial court instructed the jury that to convict McVea of second degree assault, the State had to prove that McVea assaulted another person with a deadly weapon. RCW 9A.36.021(1)(c). The jury was also told that the relevant definition of "assault" was "an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury." CP at 96; *see State v. Abuan*, 161 Wn. App. 135, 154, 257 P.3d 1 (2011). A "deadly weapon" includes any "loaded or unloaded firearm." RCW 9A.04.110(6); CP at 97. A "firearm" is defined as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(12)[1].

---

[1] We cite to the current statute because the relevant language has not changed.

The State was not required to prove that the firearm was operable. *State v. Olsen*, 10 Wn. App. 2d 731, 738, 449 P.3d 1089 (2019). Both parties discuss *Tasker,* where Division Three recognized, "[e]vidence that a device appears to be a real gun and is being wielded in committing a crime is sufficient circumstantial evidence that it is a firearm." *State v. Tasker*, 193 Wn. App. 575, 594, 373 P.3d 310 (2016).

In *Tasker*, the defendant challenged whether the device he used against the victim was a "firearm" for purposes of the firearm sentencing enhancement. *Id.* at 580-81. Division Three held that the State presented sufficient evidence to support a finding that Tasker committed his crime with a firearm based on the victim's description of the gun as "dark" and "small." *Id*. at 578, 595. The court reasoned that the victim saw the gun at close range, in broad daylight, with good visibility and was unwavering in her testimony that it was a gun. *Id.* at 595. Despite having no experience with guns "'in real life,'" she had seen guns in photographs, on the news, in television programs and in movies. *Id.* Division Three held that "[c]ollectively, the evidence was sufficient to establish the gun met the definition of a "firearm." *Id*.

Here, as in *Tasker,* OL saw the gun at close range, with good visibility on a sunny afternoon. Despite not having much experience with guns, OL described the gun as a "cowboy gun" similar to one "off of the movies." 3 VRP at 152. Her testimony was also consistent, telling both her grandmother and neighbor within an hour of the incident that McVea had a gun. Rushforth also testified to the presence of a gun, asserting that she saw a flash of a gun tucked in the back of McVea's pants when he was walking away.

In sum, two different witnesses testified that they saw a gun, and OL described the gun McVea pointed at her by comparing it to guns she had seen in movies. We defer to the trier of fact

on the persuasiveness of the evidence. *Ague-Masters*, 138 Wn. App. at 102. Construing the evidence in the light most favorable to the State, there was sufficient evidence for a jury to find that McVea was armed with a deadly weapon for purposes of the assault conviction and the deadly weapon sentencing enhancements. We affirm McVea's convictions as well as the jury's findings that he used a deadly weapon when he committed the assault and the felony harassment.

III. SENTENCING

A.    Firearm Sentencing Enhancement

McVea next argues, and the State concedes, that we should remand for resentencing to strike the firearm enhancements from his judgment and sentence and replace them with deadly weapon enhancements because the jury found that McVea was armed with a deadly weapon.

Under both the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution, the right to a jury trial requires that a sentence be authorized by the jury's verdict. *State v. Williams-Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010). "For purposes of sentence enhancement, the sentencing court is bound by special verdict findings, regardless of the findings implicit in the underlying guilty verdict." *Id.* at 900. Thus, even where a firearm is used in the commission of a crime, the only way to determine whether a deadly weapon enhancement or a firearm enhancement is authorized, is to look at the jury's special findings. *Id.*

Here, the trial court imposed firearm enhancements at sentencing despite the deadly weapon special verdicts. The only way to determine which enhancement was authorized is to look at the jury's special verdicts, and here, the jury found McVea committed the felony harassment and second degree assault with a deadly weapon. We accept the State's concession and remand for

16

the trial court to vacate the firearm enhancements and impose deadly weapon enhancements instead. RCW 9.94A.533(4)(b),(c).

B.      Firearm Offender Registration

McVea argues that the trial court also erred by requiring him to register as a felony firearm offender because the jury found that McVea was armed with a deadly weapon, not a firearm. McVea asserts that making him register without a jury determination violated his Sixth Amendment right to a jury trial.[2]

The State responds that the trial court did not abuse its discretion because the evidence at trial demonstrated that McVea was "armed with a firearm" during his offenses. Br. of Resp't at 40. We affirm the firearm registration requirement.[3]

A person convicted of a felony firearm offense *must* register as a firearm offender in certain circumstances including when the "offense [was] committed against a child under the age of eighteen." RCW 9.41.330(3)(b). Otherwise, the court's order to register as the result of a felony firearm offense is discretionary. RCW 9.41.330(1). A "felony firearm offense" includes "[a]ny felony offense if the offender was armed with a firearm in the commission of the offense." RCW

---

[2] Although the relevant assignment of error refers to a violation of statutory authority, McVea's argument appears to be only that the registration requirement violates the Sixth Amendment right to a jury trial.

[3] The State challenges whether McVea can raise this issue for the first time on appeal. If McVea is correct that the felony firearm registration is punishment, then the issue can be raised for the first time on appeal because the issue would implicate the trial court's authority to enter the order being challenged. *See* RAP 2.5(a); *Neilson ex rel. Crump v. Blanchette*, 149 Wn. App. 111, 115, 201 P.3d 1089 (2009) ("Generally, we may refuse to review a claim of error not raised in the trial court. However, where . . . the asserted error concerns the trial court's authority to act, we may elect to review the issue" (citation omitted)).

9.41.010(11)[4]. The statute does not state that *a jury* must find that the defendant was armed with a firearm in order for the crime to constitute a felony firearm offense. Here, because McVea's crimes were committed against a child, the registration requirement was mandatory if he committed his felonies with a firearm. RCW 9.41.330(3)(b).

A defendant's Sixth Amendment jury trial right requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. *Apprendi, v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The "statutory maximum" is the maximum sentence a judge may impose based on facts either admitted by the defendant or reflected in the jury's verdict. *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). But the Washington Supreme Court has held that the firearm registration requirement is a collateral consequence that does not enhance the sentence or punishment. *State v. Gregg*, 196 Wn.2d 473, 484-85, 474 P.3d 539 (2020). As such, the requirement to register is not punitive, but rather a regulatory consequence, and a jury determination is not required. *See State v. Felix*, 125 Wn. App. 575, 578-79, 105 P.3d 427 (2005) (concluding that a judge-made finding that a crime involved domestic violence did not violate the defendant's constitutional rights because consequences were regulatory, not punitive). Because the registration requirement is not punitive, McVea's constitutional rights were not violated when the trial court imposed a registration requirement without a jury finding.

The trial court checked a box on the judgment and sentence indicating in part that felony firearm registration was required because McVea committed felonies against a person under the

---

[4] We cite to the current statute because the relevant language has not changed.

age of 18 while armed with a firearm. McVea's argument is that the registration requirement violated his Sixth Amendment right to trial because *the jury* did not specifically find he was armed with a firearm when he committed felony harassment and second degree assault. For the reasons explained above, we disagree, and McVea raises no other basis to challenge the firearm registration requirement imposed on him.

## CONCLUSION

We reverse McVea's sentencing enhancements and remand for the trial court to strike the firearm sentencing enhancements and replace them with deadly weapon enhancements. We otherwise affirm.

No. 56692-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Cruser, A.C.J.